In re The UPJOHN COMPANY ANTIBIOTIC CLEOCIN PRODUCTS LIABILITY LITIGATION.

MDL No. 343.

United States District Court,
E. D. Michigan, S. D.

Jan. 18, 1979.

Rehearing Denied Feb. 13, 1979.

The defendant, Upjohn, now asks this Court for a protective order to prevent the transmission of information obtained through discovery in the multi-district litigation to independent state cases brought against Upjohn alleging similar causes of action. According to the defendant such a practice would be improper, constituting a procedure outside the scope of multi-district discovery, as well as being an abuse of the policies of multi-district litigation. Upjohn contends that it is not the purpose of discovery to provide material for suits other than the current consolidated ones. The defendant also raises the question of whether plaintiffs may sell the materials, if permitted to share discovery with nonmultidistrict cases. Finally Upjohn asserts that for the Court to permit this sharing of information would be to deprive Upjohn of the protection offered by more limited rules of discovery in some states.

R. Ray Orrill, Jr., Kenneth M. Henke, New Orleans, La., and Thomas H. Bleakley, Detroit, Mich., Liaison Counsel, for plaintiff.

William E. Bush, Kalamazoo, Mich., and Ralph F. Valitutti, Detroit, Mich., Liaison Counsel, for defendant.

## OPINION AND ORDER GRANTING PLAINTIFFS' MOTION TO VACATE PROTECTIVE ORDER AND DENYING DEFENDANT'S MOTION FOR PROTECTIVE ORDER

CORNELIA G. KENNEDY, Chief Judge.

Plaintiffs filed a motion to vacate a protective order entered by the District Court for the Eastern District of Louisiana in *Barry C. Escher v. Aetna Casualty & Surety Co.*, now part of M.D.L. No. 343. Defendant has acknowledged that insofar as that information has been released in other cases not subject to a protective order it may be released for use by all plaintiffs in M.D.L. No. 343. The Court ruled from the bench on December 1, 1978 that depositions taken in the *Escher* case are also to be made available to plaintiffs involved in this multi-district litigation.

The plaintiffs respond that under the rules set out in *United States v. I. B. M.*, 67 F.R.D. 40 (S.D.N.Y.1975) and *Reliance Insurance Co. v. Barron's*, 428 F.Supp. 200 (S.D.N.Y.1977), Upjohn is not entitled to prevent the dissemination of this information. They state that the information is not current; that it is maintained in several places and is filed with and obtainable through the FDA; and that disclosure will not place the company at a competitive disadvantage—except in that it may show Upjohn to have been a wrongdoer. The plaintiffs further contend that to enter a protective order of the sort Upjohn contemplates would be to place those persons allegedly injured by the drug Cleocin at a disadvantage for a number of reasons. One problem is that there are a limited number of experts available, and they would be reluctant to cooperate with repetitive discovery requests. The entry of a protective order presents additional problems in a case in which expert medical testimony is so important. It cannot be argued that in a typical case the hazardous nature of a substance is properly to be regarded as a trade secret. Indeed, it might well result in a

violation of medical ethics if a court were to require an expert acquainted with the hazards or potential hazards of a drug to conceal that knowledge from the public in general or particular patients. According to plaintiffs, duplicating discovery unnecessarily increases the total time and money required to prepare for trial. This is an especially important consideration where, as here, each individual's potential recovery is likely to be small. Finally the plaintiffs contend that such a protective order would be a prior restraint on free speech.

In order to analyze properly the propriety of using information in one case obtained through discovery in another, it is necessary to distinguish the rules applicable to the one, the role of the judge therein, and the interests involved from those that apply in the other case. The defendant does not suggest, and there is no reason to suspect, that the multi-district cases now pending before this Court were brought in bad faith merely as a means of obtaining information for use in other litigation. To have done so would constitute an abuse of the discovery process in the multi-district cases. *See Johnson Foils, Inc. v. Huyck Corp.*, 61 F.R.D. 405, 410 (N.D.N.Y.1973); *Beard v. New York Central Railroad Co.*, 20 F.R.D. 607, 610 (N.D.Ohio 1957); *but cf. GAF Corp. v. Eastman Kodak Co.*, 415 F.Supp. 129, 131 (S.D.N.Y.1976); *Crabtree v. Hayden, Stone, Inc.*, 43 F.R.D. 281 (S.D.N.Y. 1967). Therefore, to the extent that discovery has taken place and been disseminated among plaintiffs involved in this multi-district action, nothing improper has taken place that would require entry of a protective order. Indeed it is the purpose of multi-district litigation to promote the sharing of discovery within the consolidated cases.

As far as its contemplated use in nonmulti-district litigation is involved, the Court must consider the sources and means which may properly be used in order to gather information for trial. It is evident that the discovery rules do not provide the only method of obtaining information. The Freedom of Information Act, for example, has come to be both a permissible and effective tool for trial preparation in some cases. Such an alternate avenue does not violate the Federal Rules of Civil Procedure and does advance certain of their policies, such as avoiding surprise at trial. *F. T. C. v. Anderson*, 442 F.Supp. 1118, 1124 (D.D.C. 1977). The Federal Rules themselves contemplate some flexibility in the discovery process, *see* F.R.Civ.P. 27(a)(4); 32(a), and nowhere expressly prohibit such a practice. *See Standard Oil Co. v. Federal Energy Administration*, 440 F.Supp. 328, 368 n. 103 (N.D.Ohio 1977). The two rules cited do not address the question of whether discovery may be shared between a federal and state case on the same basis as between two federal cases. To distinguish between the two situations would be to make a distinction on the basis of citizenship, a distinction which does not appear to have been intended. Where the parties have had similar interests and motives in the various cases, then it would appear that their rights have been adequately protected and there is no reason not to make the discovered materials available.

Nor can it be said that the plaintiffs in this complex litigation case have no interest in the use of multi-district discovery beyond these cases. Parties in other litigation may have knowledge of facts relevant to plaintiffs' claims. Plaintiffs should be in a position to exchange information with other litigants with similar claims in order to develop their cases more fully.

Furthermore, it is inappropriate for this Court to limit the means by which litigants in cases not before it may obtain information which is not otherwise under a protective order. If Upjohn requires protection in other forums, then it should apply to the courts before which those cases are pending. *F. T. C. v. Anderson*, 442 F.Supp. 1118, 1124 (D.D.C.1977); *Uinta Oil Refining Co. v. Continental Oil Co.*, 36 F.R.D. 176, 182 (D.Utah 1964).

The defendant has expressed its concern that the sale of this information may be accomplished by wholesale advertising and unethical practices such as barratry. The

Court sees nothing improper in plaintiffs involved in independent state cases who use the discovery material reimbursing the multi-district plaintiffs' out-of-pocket costs. To do so would be in accord with the policies of the Federal Rules of Civil Procedure, which seek to secure the just, speedy, and inexpensive resolution of every action. F.R. Civ.P. 1; *see Williams v. Johnson & Johnson*, 50 F.R.D. 31 (S.D.N.Y.1970); *see generally Code of Professional Responsibility* ED 2–24, 2–25, DR 2–104, 2–107. Indeed such a sharing of information has benefits for the defendant as well, in not being continually called upon to reproduce this information in each case as it is filed. The Court does, however, remind counsel for plaintiffs that, although the information may properly be shared with litigants who are not part of the multi-district litigation action, there may still be ethical rules of professional conduct that apply. Nothing in this opinion is intended to release any person from full compliance with those rules. *See, e. g.,* 47 U.S.L.W. 2429 (Jan. 9, 1979).

During the time this action is pending before this Court the Court will require that prior to any release of information to parties in nonmulti-district cases, the plaintiffs must state to the Court the terms upon which any information is to be provided other litigants. The plaintiffs should include the jurisdiction in which the case is pending, the attorneys involved, the terms for payment and reimbursement, any involvement of present counsel in the other case, including, when that involvement began, and the information desired to be released. This procedure will serve to monitor whether the discovery required in the instant nonmulti-district case has as its purpose matters not relevant hereto but required primarily for other independent litigation.

Any other documents on file in the repository of documents established by the Court's Order are to be reviewed by counsel for the defendant in order to determine whether there are other objections to the release of those documents, such as trade secrets or privileges, with that review to be completed and objections filed by February 15, 1979, at which time it will be deemed that there are no objections to their disclosure on the same terms as other discovery in this action.

Defendant's motion for Protective Order is DENIED. Plaintiffs' motion to Vacate the Protective Order is GRANTED as provided in the Court's accompanying order.

ORDER DENYING MOTION FOR REHEARING, RECONSIDERATION, OR, ALTERNATIVELY, FOR DESIGNATION OF THE COURT'S ORDER OF JANUARY 18, 1979 AS A CONTROLLING QUESTION OF LAW

CORNELIA G. KENNEDY, Chief Judge.

Defendant Upjohn has requested that this Court grant it a hearing on its Motion for Rehearing, Reconsideration, or, Alternatively, for Designation of the Court's Order of January 18, 1979 as a Controlling Question of Law. Under local rules no oral argument on a motion for reconsideration is to be allowed unless the Court otherwise directs. Local Rule IX(n)(3). Upjohn bases its request for reconsideration on the ground that it believes this Court has misunderstood its arguments or overlooked material facts in rendering its decision. The Court believes that it fully understands defendant's position and sees no need for oral argument. Accordingly, the request for oral argument is DENIED.

 In rendering its decision on the question of the protective order, it was the considered opinion of this Court that the defendant had not, to this point, demonstrated its entitlement to a protective order; although there do remain some documents as to which it may still raise objections entitling it to an order respecting those specific documents. Protective orders may be obtained only in circumstances in which special need is demonstrated for them. As in the present case, "any restrictive order involving a prior restraint upon First Amendment freedoms is presumptively void and may be upheld only on the basis of a clear showing that an exercise of First

Amendment rights will interfere with the rights of the parties to a fair trial." *CBS, Inc. v. Young*, 522 F.2d 234, 241 (6th Cir. 1975). One ground for the entry of a protective order is the existence of substantial and serious harm resulting from the dissemination of the material. In the case of a business defendant, as here, information helpful to its competitors or certain species of information in which it has a privacy interest might qualify for a protective order. Any protective order must be drawn as narrowly and precisely as possible in order to avoid infringement upon first amendment rights. Finally the person requesting the protective order must demonstrate that there are no alternative means by which it is possible to make a smaller intrusion on the freedom of expression. *See In re Adele Halkin*, —— U.S.App.D.C. ——, at ——, 598 F.2d 176, at 191 (1979).

▆ In the present case, the defendant has conceded the necessity of modifying the protective order in the *Escher* case to meet the purpose of multidistrict litigation, although it differs with the breadth of modification required. It concedes that the information must be disseminated to the rest of the plaintiffs in this action. This Court is unable to find any basis for entering a protective order in those multidistrict cases in which none presently exists. The parties, aside from *Escher,* may thus distribute any information so far gained through discovery without restriction—other than the restrictions placed upon those engaged in litigation in general.

The inherent value of speech in terms of its capacity for informing the public does not turn on how or where the information was acquired. *See First National Bank of Boston v. Bellotti*, 435 U.S. 765, 778–783, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978). Even where information has been stolen, *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); *Rodgers v. United States Steel Corp.*, 536 F.2d 1001, 1008 n.16 (3d Cir. 1976), or retained in violation of a security agreement, *United States v.*

*Marchetti,* 466 F.2d 1309, 1317 (4th Cir.), *cert. denied,* 409 U.S. 1063, 93 S.Ct. 553, 34 L.Ed.2d 516 (1972), individuals who obtain such information have been held to have First Amendment rights in its dissemination.

A party's right to disseminate information is far stronger for discovery materials than for information that has been stolen or obtained in breach of contract. Generally speaking, when a party obtains documents or information through the discovery process, he can "use that information in any way which the law permits." . . . The discovery Rules themselves place no limitations on what a party may do with materials obtained in discovery. . . . The implication is clear that without a protective order materials obtained in discovery may be used by a party for any purpose, including dissemination to the public.

*In re Adele Halkin*, —— U.S.App.D.C. ——, at ——–——, 598 F.2d 176, at 187–188 (1979). Although it would be possible to leave undisturbed the protective order in the *Escher* case, that would lead to an anomalous result of little use to the defendant, in that the same information could be disseminated freely by every other plaintiff in this consolidated action except *Escher.* In order to avoid such an odd result, the Court determined that it would be best to vacate the order in all of the consolidated cases.

▆ Upjohn contends that this Court's order vacating the protective order is inconsistent with case law which holds that one court may not disturb an order entered by another court. This is a correct statement of the law. However, multidistrict litigation, particularly in the discovery stage, is subject to some exceptions to the general rule. It has been held that pretrial proceedings and the conduct of discovery are matters exclusively in the control of the transferee judge. *See, e. g., In re Sundstrand Data Control, Inc. Patent Litigation*, 443 F.Supp. 1019, 1021–22 (Jud.Pan.Mult. Lit.1978); *In re FMC Corporation Patent*

*Litigation,* 422 F.Supp. 1163, 1165 (Jud.Pan. Mult.Lit.1976); *In re Molinaro/Catanzaro Litigation,* 402 F.Supp. 1404, 1406 (Jud.Pan. Mult.Lit.1975). It is the duty of the transferee court to control pretrial procedures in the consolidated cases in such a way as to avoid the pretrial chaos which could exist as a result of conflicting prior rulings.

The defendant cites *In re Penn Central Securities Litigation,* 62 F.R.D. 181 (E.D.Pa.1974), for the proposition that one judge may not upset the order of another judge. However, in that case the order concerned the amendment of a complaint, a matter in the discretion of the transferor court to which the case will most likely return for eventual trial. The situation is different in the case of discovery procedures, since it is essentially for the facilitation of discovery that multidistrict litigation exists.

> On change of venue the overwhelming authority holds that the jurisdiction and powers of the transferee court are coextensive with that of the transferor court; that the transferee court may make any order to render any judgment that might have been rendered by the transferor court in the absence of transfer. . . .
> These principles are applicable to a transfer under Section 1407 from the time of entry of the order of transfer until the time of entry of an order of remand.

*In re Plumbing Fixtures Cases,* 298 F.Supp. 484, 495 (Jud.Pan.Mult.Lit.1968). Thus, the transferee court acts in the stead of the transferor court and may exercise any powers which the original court could have. The other cases cited by the defendant also do not apply to the question before the Court.

Finally, this Court is of the opinion that the order issued on January 18, 1979 does not involve a controlling question of law as to which there is substantial ground for difference of opinion.

The motion of the defendant Upjohn is accordingly DENIED.

IT IS SO ORDERED.