Joseph F. WHELAN, et al., Plaintiffs,

v.

**MERRELL–DOW PHARMACEUTICALS, INC., Defendant.**

Civ. A. No. 83–3108.

United States District Court, District of Columbia.

Feb. 13, 1987.

Elaine Mittleman, Falls Church, Va., for plaintiffs.

Mark L. Austrian, Sara Miller, Collier, Shannon, Rill & Scott, Washington, D.C., for defendant Merrell Dow Pharmaceutical Inc.

## MEMORANDUM OPINION and ORDER

ARTHUR L. BURNETT, Sr., United States Magistrate.

Before the United States Magistrate are several motions dealing with discovery and pretrial issues. The Magistrate has now reviewed the entire court file and in order to furnish definitive directions to counsel for the completion of discovery, the Magistrate will proceed to deal with the principal motions in this memorandum opinion.

One of the principal problems concerning the scope of pretrial discovery in this case arises out of the fact that this case was one of the cases consolidated for pretrial discovery purposes in the multidistrict litigation in the U.S. District Court of Ohio known as *In Re: Richardson-Merrell Inc. "Bendectin" Products Liability Litigation* (No. II), 606 F.Supp. 715 (Jud.Pan. Mult.Lit.1985). In connection with the cases being remanded back to the transferor courts for further proceedings, Chief Judge Carl B. Rubin of the Southern District of Ohio, who had presided over the

consolidated multidistrict pretrial proceedings, entered a "Stipulation Status Report" Order on June 10, 1985, the relevant portions of which were:

> 2. During the three year period that the Bendectin multidistrict cases were pending before this Court, a lead counsel committee selected by the plaintiffs conducted discovery from defendant Merrell Dow Pharmaceuticals Inc. regarding the common issues of causation and liability. The discovery conducted by the Plaintiffs Lead Counsel Committee was on behalf of and applicable to all cases in the multidistrict litigation.

> \*     \*     \*     \*     \*     \*

> 4. In addition to the discovery regarding the common issues of liability and causation conducted by the plaintiffs against Merrell Dow, Merrell Dow conducted a limited amount of discovery against the individual plaintiffs which was unique to a particular case.[1]

A common issues trial was held in the Ohio District Court for the Ohio plaintiffs and those who "opted in" to that proceeding. Those cases in which the plaintiffs did not "opt in" were the ones remanded back to the transferor courts, and as to those cases, the Stipulated Status Report Order provided:

> 9. The cases which are being remanded to the transferor courts are those which did not "opt-in" to the common issues trial. Discovery from Merrell Dow in these cases as to the common issues is complete. Such discovery from Merrell Dow has not, however, been generally made available to the individual plaintiffs' counsel, although procedures are being developed to do so. ...

> 10. In many cases discovery is not complete as to individual aspects of the case, particularly the discovery by Merrell Dow of the plaintiffs' medical background, family history, damages and medical experts. The principal reason for any such incomplete discovery as to individual issues is that the Court stayed discovery by Merrell Dow for approximately a year in order to facilitate the settlement proceedings and the common issues trial preparation. ...

■ Counsel for the plaintiffs on August 11, 1986 filed a motion styled, "Plaintiffs' Motion to Sustain and Affirm All Pretrial Orders Relating to Discovery Remanded Back from the MDL Pretrial Consolidated Proceedings." Counsel correctly observed that the purpose of multidistrict pretrial proceedings is to consolidate cases to prevent duplication of discovery, avoid inconsistent pretrial rulings and to conserve and economize judicial effort, citing *In re Data General Corporation Antitrust Litigation,* 470 F.Supp. 855, 858 (Jud.Pan.Mult. Lit.1979). Efficiency and economy of resources are also achieved by eliminating the need to repeatedly depose and re-depose the same experts. *See In re Upjohn Co. Antibiotic Cleocin Products,* 81 F.R.D. 482, 483–84 (E.D.Mich.1979). The problem in this case is first determining exactly what pretrial rulings were made which govern this case, and what discovery was conducted as to common issues, as the Clerk's office here has advised that it did not receive all of the referenced documents back from the Southern District of Ohio on discovery and pretrial matters.[2] It would thus be imprudent to either grant or deny the Motion as presented to the court in such a "broad brush" manner.

■ However, from a review of the court file the Magistrate is prepared to make the following rulings. First, all discovery had, and pretrial rulings made as to discovery from Merrell Dow in the multidistrict litigation on Bendectin, shall be fully applicable to this case. As the Court

---

1. It does not appear from an examination of the papers in the present court file that Merrell Dow conducted any discovery directed to the Whalen plaintiffs while this case was pending before the Southern District of Ohio Court.

2. The Magistrate by letter to the Clerk of the United States District Court for the Southern District of Ohio has requested the court to furnish us with a copy of the Master Docket Sheet in the multidistrict litigation and a copy of the docket sheet and of the pretrial discovery papers and rulings in the *Whalen* case which was assigned the number C–1–84–145 in the Southern District of Ohio.

there stated in its Stipulated Status Report Order, all discovery from Merrell Dow as to common issues was complete. Thus Merrell Dow is deemed to have fully complied with its obligations in answering interrogatories, producing documents and records, and in furnishing corporate representatives for depositions as to the general issues concerning the manufacturing, advertising, marketing and testing of Bendectin and what it knew concerning whether Bendectin was capable of causing in humans limb deformities and other physiological impairments. Second, the Magistrate concludes that all discovery had of plaintiffs' experts, in general, as to whether Bendectin was capable of causing limb deformities and physical impairments in fetuses, shall be deemed applicable to this case, and depositions of these experts need not be repeated, and indeed, their videotaped depositions shall be usable in this case if the purpose of multidistrict pretrial proceedings is to be achieved. *See In re Upjohn Co. Antibiotic Cleocin Products, supra.* Thus, subject to a particular motion *in limine* by the defendant to preclude the use of a particular videotape deposition of an expert given in the MDL proceeding, the videotape depositions as to the character and composition of Bendectin and its teratogenic qualities, in general, may be used by the plaintiff in this case to the extent that the deposition testimony is relevant to the issues in this case. In all other respects, plaintiffs' motion to sustain and affirm all pretrial orders relating to discovery remanded back from the MDL pretrial consolidated proceedings, filed August 11, 1986, is DENIED without prejudice to renew as to particular discovery or a specific pretrial ruling in the multidistrict proceeding relevant to preparation for the formal pretrial conference in this case, arriving at stipulated facts for the trial of this case, or as evidence to be admitted at the trial of this case.

It appears that the principal problem in this case concerning the scope of discovery has been plaintiffs' counsel's perception of what were the "common issues" in the case and the meaning and scope of the language "individual aspects of the case, particularly the discovery by Merrell Dow of the plaintiffs' medical background, family history, damages and medical experts", the latter providing for the scope of discovery allowable upon return of the cases to the transferor courts.[3] As the Magistrate views the record in this case the common issues dealt with the general question of whether Bendectin was capable of causing limb or other physical birth defects in babies in utero and whether this could be established by a preponderance of the evidence. If that general question were answered in the affirmative, there would still be the further question as to whether in this particular case as to the plaintiff, Joseph F. Whelan, did the taking of Bendectin by his mother, Elizabeth Ann Whelan De Garza, doing the first trimester of her pregnancy, cause his physiological impairments and defects. It appears that the failure of plaintiffs' counsel to appreciate this distinction in filing her Rule 26(b)(4)(A)(i) statement as to experts is what has led to much of the discovery discord in this case and to the motion by the defendant, filed December 2, 1986, to strike plaintiffs Rule 26(b)(4)(A)(i) statement and for sanctions of an award of attorneys' fees and cost.[4]

---

3. It is significant to note that counsel for the plaintiffs in this case made a motion before Chief Judge Carl B. Rubin in the Southern District of Ohio for clarification of his discovery order, Amended Pretrial Order No. 1, dated May 14, 1982. Counsel for the defendant characterize plaintiffs' motion for clarification as requesting the Court to interpret its previous Amended Pre-trial Order No. 1 as precluding further discovery of plaintiffs' expert witnesses by the defendant. Judge Rubin denied plaintiffs' motion by minute entry on the face thereof on September 13, 1986.

4. In filing the motion counsel for the defendant characterized plaintiffs' Rule 26(b)(4)(A)(i) statement as inaccurate and misleading and as being filed without proper investigation. Counsel for the defendant have asserted that plaintiffs' counsel's submission revealed a total lack of comprehension of counsel's responsibility to make even a reasonably accurate filing. They urged in their motion that plaintiffs' actions justified sanctions pursuant to Rules 11, 26 and 37 of the Federal Rules of Civil Procedure.

■ It is the Magistrate's view that even in a case involving a multidistrict discovery proceeding and the taking of depositions, counsel for an individual plaintiff has a duty to consult with an expert to be listed in a Rule 26(b)(4)(A)(i) statement prior to filing that statement to determine that the expert, notwithstanding having furnished a deposition in the multidistrict proceeding, will be available to testify in the trial of this particular case and is willing to do so, and the exact scope of that expert testimony. Perhaps, the problems such as occurred with Dr. Johannes Thiersch and the scope of his testimony, represented as including the medical histories of the three (3) plaintiffs in this case and that Bendectin had caused the impairments of Joseph F. Whelan and that Dr. Thiersch would testify about the animal studies conducted at NIH from 1981–1983, could have been avoided had counsel for the plaintiffs exercised more care. It now appears that the Rule 26(b)(4)(A)(i) statement would have been accurate only if it had been represented that Dr. Thiersch's testimony would be frozen in point of time to what he stated in his videotape deposition in 1983 and limited to the question of whether Bendectin was capable of causing limb deformities and impairments in human beings in general.[5] Counsel has a duty to be precise and accurate in filing Rule 26(b)(4)(A)(i) statements.

*Cf. Duncan v. WJLA–TV, Inc.,* 106 F.R.D. 4 (D.D.C.1984).

After a thorough review of the court file and to "set the record straight" without any ambiguities or current inaccuracies, the Magistrate has decided that the defendant's motion to strike plaintiffs' Rule 26(b)(4) statement should be GRANTED, in part, only. The Magistrate fully realizes that plaintiffs' counsel has also filed two (2) supplemental Rule 26(b)(4)(A)(i) statements. The Magistrate hereby requires counsel for the plaintiff to file a consolidated comprehensive superseding Rule 26(b)(4)(A)(i) statement no later than 4:00 p.m., February 25, 1987, based on her current personal assessment and professional judgment as to the experts she will use in this case, if it proceeds to trial, as now scheduled, on November 16, 1987. Specifically, the superseding Rule 26(b)(4)(A)(i) statement shall reflect:

1. The list of experts who will testify solely on whether Bendectin is capable of causing limb deformities and other physical impairments in humans.

2. The list of experts who will testify to the individual aspects of this case and specifically as to all three (3) plaintiffs' medical background, family history, and medical histories to date. This will include all experts who will endeavor to establish *causation* in this particular

---

**5.** It further appears that following the filing of plaintiffs' Rule 26(b)(4)(A)(i) statement on June 6, 1986, when counsel later in June, 1986 attempted to arrange the depositions of the experts she had listed, Dr. William McBride was in Australia and Dr. Mark Thoman would not have been available for deposition until November, 1986, which would have been several weeks after the then scheduled trial date of October 14, 1986. It is noted that in the Rule 26(b)(4) statement counsel had represented that both doctors would testify about his review of the prenatal and delivery records of the infant plaintiff and the subsequent medical records relating to the infant plaintiff and his review of the genealogical and medical history of the parents and parents' families. It was further represented that they would testify not only that Bendectin was a teratogenic agent as to the developing fetus in pregnant women who ingested Bendectin but that Elizabeth Ann Whelan De Garza's ingestion of Bendectin caused or contributed to the injuries incurred and suf-

fered by Joseph F. Whelan. The defendant has represented that both doctors testified upon deposition in the multidistrict pretrial discovery proceedings. Query whether their deposition testimony dealt only with the subject of whether Bendectin was capable of causing birth defects and deformities in human beings in general and whether they even mentioned the Whalen plaintiffs or were familiar with their particular medical histories at that time. The same question can be raised as to Dr. Stanley C. Glauser. As of June 6, 1986 had he reviewed the prenatal and delivery records of the infant plaintiff, Joseph F. Whelan, his subsequent medical records and the medical history of his parents, the other two plaintiffs in this case? Further, the statement as to Dr. David Hughes was so conclusory in nature as to be virtually of no practical use in determining what his testimony as an expert would be. This listing of deficiencies in the Rule 26(b)(4) statement is not intended to be exhaustive.

case as to the plaintiff, Joseph F. Whelan's impairments and physical defects.

3. The list of experts who will testify to the nature and extent of Joseph F. Whelan's impairments and the impact thereof on his future earning capacity and his physical and social adjustment in life.

As to the experts in each category, counsel shall indicate whether she has spoken with that expert and whether that expert is available and willing to testify in this case and whether the testimony will be presented live or by videotape or written deposition. Further counsel shall set forth a complete and detailed Rule 26(b)(4)(A)(i) statement which:

1. States the opinion or opinions the expert will give in this case.

2. The substance of the facts relied upon by the expert in this case to which the expert will testify at trial.

3. The summary of the grounds for each opinion.[6]

The plaintiffs' experts at trial will be limited to those listed and set forth in the superseding Rule 26(b)(4)(A)(i) statement.

The Magistrate has concluded that the sanctions phase of the motion for an award of attorneys' fees and costs should be deferred until after completion of discovery. Cf. Foster v. Michelin Tire Corp., 108 F.R.D. 412 (C.D.Ill.1985). It is more practical to focus on the merits of this litigation at this stage and to reserve judgment on the conduct of counsel.[7] The diligence of counsel and the good faith compliance with this Order will be factors the U.S. Magistrate will consider at the time a hearing is held on this sanction issue following the close of discovery. Indeed it may be more appropriate to reserve judgment on the sanction issue until after conclusion of the trial on the merits, for the Magistrate is concerned that at this stage of the proceedings, imposing sanctions and a substantial award of attorneys' fees and reimbursement for expenses against counsel alone, or against counsel and the plaintiffs, will have a significant adverse impact on the attorney-client relationship. See generally, Nelken, Sanctions Under Amended Federal Rule 11–Some "Chilling" Problems in the Struggle Between Compensation and Punishment, 74 Georgetown L.J. 1313, 1343–44 (1986). This, by no means, implies that substantial sanctions may not be appropriate at the end of the case. See, e.g. Perkinson v. Houlihan's/D.C., Inc., 110 F.R.D. 55 (D.D.C.1986).

Counsel for the plaintiff on December 4, 1986 filed a motion for an order that the deposition of Dr. H. Charles Smith be taken in Bluffton, Indiana rather than Washington, D.C. Thereafter, when the scheduled deposition for December 17, 1986 was cancelled by the defendant, counsel for the plaintiff on December 12, 1986 filed a motion to preclude the defendant from taking the deposition of Dr. H. Charles Smith in this case. Counsel for the defendant have explained that they cancelled the deposition because of the pressing demands of another Bendectin trial which they had only been engaged to try on December 5, 1986, the trial of which was scheduled to commence on January 5, 1987 in the U.S. District Court in Philadelphia, Pennsylvania. They assert that with only a month for preparation, they concluded it was more important to devote the time to the trial preparation in that case. They also noted that the deposition of "Dr. Smith was made even more difficult by the failure of plaintiffs' counsel to provide an accurate Rule 26(b)(4) statement so that defendant could anticipate the scope of Dr. Smith's testimony." The Magistrate concludes that the request for a Protective Order should be DENIED,

---

**6.** The Magistrate fully realizes that depositions have been taken of several of plaintiffs' previously listed experts and that the defendant may be in possession of most of the required information as to these experts. However, to eliminate any further grounds for arguments and disputes between counsel, the Magistrate is requiring one (1) consolidated comprehensive superseding Rule 26(b)(4)(A)(i) statement which

will control as to the experts who will be permitted to testify at trial and which will control as to the scope of their testimony.

**7.** See Sofaer, Sanctioning Attorneys for Discovery Abuses Under the New Federal Rules: On the Limited Utility of Punishment, 57 St. John's Law Review 680, 717 (1983).

but that any future deposition of Dr. Smith should be held in Bluffton, Indiana, and if Dr. Smith suffered any financial losses as a result of patient cancellation on December 17, 1986, upon the submission of an affidavit as to that financial loss, filed by plaintiffs' counsel with this court, Merrell Dow shall reimburse Dr. Smith for that loss as a condition precedent to taking his deposition, as well as pay for his preparation time and the time in deposition when the deposition is actually conducted.

On July 11, 1986 the defendant submitted and filed "Defendant's First Requests for Admission." The plaintiffs have not responded to that set of requests for admissions pending a ruling by the court on defendant's motion, filed June 17, 1986, to make certain pretrial rulings by the Court (Johnson, J.) in *Koller v. Richardson-Merrell Inc.*, C.A. No. 80–1258, applicable to this case. The Court has authorized the Magistrate to rule thereon subject to a *de novo* determination by the Court at the time of the trial. The Magistrate, having fully examined the record, concludes that the defendant's motion to preclude any evidence relating to the drugs, thalidomide and MER/29 and Merrell-Dow's connection therewith should be precluded in the trial of this case as to the issues of liability and compensatory damages.[8] Such a restriction is not only in accord with Judge Johnson's ruling in *Koller* of October 19, 1982 but also with the ruling of Judge Thomas

Jackson of this court in *Carita Richardson, et al. v. Richardson-Merrell, Inc.*, C.A. No. 83–3505. See Memorandum and Order filed December 19, 1986 granting defendant's motion for judgment n.o.v. or a new trial, 649 F.Supp. 799. In the multidistrict litigation Chief Judge Carl B. Rubin also imposed a similar restriction on plaintiffs' counsel. *In Re: Richardson-Merrell Inc. "Bendectin" Products Liability Litigation*, 97 F.R.D. 481, 484 (S.D.Ohio, 1983).[9]

The defendant has also requested that the Court's Order of February 25, 1983 providing that statistical evidence is admissible only if that evidence is statistically significant at the 95% confidence level and precluding plaintiffs from presenting alleged methodological flaws and other errors in epidemiological and animal studies in the case in chief be adopted and applied in this case.[10] After a review of the parties' memoranda on this issue, the opinion by Judge A. David Mazzone in *Lynch v. Merrell National Laboratories*, 646 F.Supp. 856 (D.Mass.1986) and the authorities there discussed, the Magistrate concludes that the defendant's motion in this respect should be GRANTED.[11]

Finally, in its *Koller* motion the defendant requested that the court bifurcate the trial of this case as to issues of liability and damages. The Magistrate concludes that

8. Testimony concerning thalidomide and MER/29 may be admissible on the issue of punitive damages if a trial thereon is ever reached. It is noted that Merrell Dow has indicated an intent to file a motion in this case seeking dismissal of plaintiffs' claims for fraud and punitive damages.

9. The court there referred to an earlier pretrial ruling on a discovery dispute in which it held that evidence of defendant's actions relating to thalidomide and MER/29 was not relevant to the litigation. The court concluded that the prejudice would far outweigh the probative value of this evidence.

10. It is proper to consider epidemiological studies in this type of tort action, provided it is based on sound reliable data and analysis. *See, generally Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529, 1535–36 (D.C.Cir.1984), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432

(1984); *In re "Agent Orange" Products Liability Litigation*, 603 F.Supp. 239, 246 (E.D.N.Y.1985).

11. The Magistrate is aware that Judge Thomas P. Jackson in *Carita Richardson, supra*, took a different approach and allowed those studies which appeared in peer-reviewed professional journals in evidence under Rule 803(24) of the Federal Rules of Evidence. It is recognized that a persuasive argument can be advanced that if a study is published in a refereed journal, it is done in a way generally accepted in the scientific community and an expert can rely upon it. Likewise, government studies done by the Centers for Disease Control may be deemed reliable and admissible under Rule 803(24). Nonetheless the Magistrate will adhere to the ruling made by Judge Johnson in the *Koller* case here, since this case is assigned to her for the ultimate trial or other disposition and the standard for admissibility at trial should be subject to her final ruling.

that issue should be deferred until at least the formal pretrial conference in this case now set for October 16, 1987 at 2:00 p.m.

With the foregoing disposition of the defendant Merrell Dow's motion regarding applying the pretrial rulings made in the *Koller* case, the plaintiffs are required to answer defendant's requests for admissions, filed July 11, 1986, within thirty (30) days of this date, in full and complete compliance with Rule 36, of the Federal Rules of Civil Procedure. Specifically, the plaintiffs' answers shall specifically either admit or deny the matter or set forth in detail the reasons why they cannot truthfully admit or deny the matter. The plaintiffs have a duty to make reasonable inquiry. If a part of a matter is true, each plaintiff shall so state, qualifying or denying only that part he or she can not admit. Due diligence and good faith will be required of the plaintiffs and their counsel, subject to sanctions for failure to comply with the letter and the spirit of Rule 36.

The defendant has requested an extension of time for the filing of its Rule 26(b)(4) statement, noting that the deposition of a plaintiff's expert, Dr. Michael Melnick, who was only designated by the plaintiff on December 5, 1986, is now set for March 16, 1987. The defendant's counsel also noted that they had not yet received reports from plaintiffs' expert, Ms. Sandra B. Lucento, or from a Ms. Rhonda Davis and Ms. Phyllis Shapero, the latter two experts being designated by the plaintiffs on December 22, 1986. The defendant suggested the necessity, based on these problems, for an extension of the discovery period. Further compliance with the requirements set forth in this Order will also require additional time. Having consulted with the Court (Johnson, J.), the discovery completion date is hereby changed from March 6, 1987 to April 30, 1987. As indi-

cated above the plaintiffs are required to file a superseding Rule 26(b)(4)(A)(i) statement no later than 4:00 p.m., February 25, 1987. The defendant shall file its Rule 26(b)(4)(A)(i) statement no later than 4:00 p.m., March 16, 1987, which must be *complete* and *detailed* in nature as to all experts it then contemplates.[12] Leave is GRANTED to the defendant to supplement its Rule 26(b)(4)(A)(i) statement within fifteen (15) days after completing depositions of *all* of plaintiffs' experts. The plaintiffs shall make *all* of their experts, not already deposed, available so that their depositions may be completed no later than March 20, 1987. All further depositions must be completed by April 30, 1987.[13] Dispositive motions, if any, must be filed no later than June 1, 1987.

In preparation for the formal pretrial conference set for October 16, 1987 counsel may submit pretrial statements in the form, and with the content, of trial briefs as set forth in the Court's order of October 10, 1986. The trial briefs shall be filed no later than October 14, 1987, with a copy to the Magistrate's chambers for purposes of review prior to the pretrial conference.[14]

The foregoing directions and instructions to counsel will constitute the rulings of the Magistrate on the pending motions and good faith compliance by counsel for each of the parties is required. It is this 13th day of February, 1987 SO ORDERED.

## ORDER

By motion, filed September 18, 1986, counsel for the plaintiffs requested the court to issue an order requiring the deposition reporter to submit the deposition of Elizabeth Whelan De Garza to her in San Antonio, Texas for signature. Julie C. Bryan and Capitol-Shore Reporting Compa-

---

**12.** It is noted that the defendant has defended a number of Bendectin cases and should be able to list most of its experts now.

**13.** Counsel shall meet and confer in an endeavor to resolve any future discovery disputes. If the dispute cannot be resolved, counsel may contact the Magistrate's chamber to schedule a prompt hearing. Sanctions will be imposed for

any unwarranted or unjustified conduct as to discovery matters.

**14.** Requiring trial briefs to be filed in advance of the pretrial conference and to be used for the formal pretrial conference eliminates the need for separate, earlier, pretrial statements and conserves counsel's time and reduces expenses for the clients.

ny filed on October 6, 1986 a motion for leave to file a memorandum in response to the motion and participate in oral argument. Counsel for the plaintiffs on October 17, 1986 filed an opposition to the motion of Julie C. Bryan and Capitol-Shore Reporting Company.

Upon consideration of the foregoing and a review of the entire court file, and with due regard to Rule 1 that the Federal Rules of Civil Procedure should be construed to achieve a speedy and inexpensive determination of every action, the Magistrate concludes that a deposition transcript can be "submitted" to a deponent for review as to accuracy and correctness by certified mail within the meaning of Rule 30(e). Accordingly, it is hereby this 13th day of February, 1987,

ORDERED:

1. That the motion of Julie C. Bryan and Capitol-Shore Reporting Company for Leave to File a Memorandum and participate in oral argument be and is hereby DENIED.

2. That a copy of Elizabeth Ann Whelan De Garza's deposition be mailed to her by *certified mail,* return receipt requested, to her address in San Antonio, Texas (5914 Forest Mill, San Antonio, Texas 78240) and upon receipt, Mrs. De Garza is to review, without making any photocopy thereof, and indicate on a separate errata sheet or sheets her corrections and promptly mail the transcript with errata sheet or sheets back to the deposition reporter. The plaintiffs shall pay, in advance, a sum of money sufficient to cover the costs of the reporter mailing the transcript to her for her review and the costs for its return. Mrs. De Garza's violation of the restrictions of this Order as to her possession and use of the transcript, and as to making copies, should a violation occur, will result in sanctions against her as a plaintiff in this case.