In re: The **UPJOHN COMPANY ANTIBIOTIC CLEOCIN PRODUCTS LIABILITY LITIGATION.**

Juanita **STAVRO, et al.,**
Plaintiffs-Appellees,

v.

The **UPJOHN COMPANY,**
Defendant-Appellant.

No. 79–1213.

United States Court of Appeals,
Sixth Circuit.

Argued April 9, 1981.
Decided Nov. 19, 1981.

Rehearing Denied Jan. 11, 1982.

William E. Bush, Larry Moore, Kalamazoo, Mich., Richard L. Josephson, Lead Counsel, James T. McCartt, David R. Smith, Baker & Botts, Houston, Tex., James G. Smith, Ralph F. Valintutti, Jr., Kitch & Suhrheinrich, Detroit, Mich., for defendant-appellant.

Thomas H. Bleakley, Charfoos & Charfoos, John Konkel, Detroit, Mich., Hayim I. Gross, Troy, Mich., Kenneth M. Henke, New Orleans, for plaintiffs-appellees.

Before LIVELY, ENGEL and BROWN, Circuit Judges.

ENGEL, Circuit Judge.

The issue in this appeal is the extent to which a transferee judge in multidistrict litigation proceedings under 28 U.S.C. § 1407 may vacate and modify protective orders earlier entered by transferor courts, where those orders enjoin the use of discovery materials obtained through the federal litigation by others not parties to the multidistrict litigation. In an opinion reported at 81 F.R.D. 482 (E.D.Mich.1979), then United States District Judge Cornelia G. Kennedy concluded that since the order of the transferor court related to the subject of discovery, the ongoing responsibility for supervision in the transferee court included the power to vacate or modify the earlier order of the transferor court. This was so, Judge Kennedy ruled, although the protective order was restricted to parties to state and federal litigation not covered by the order of reference by the panel on multidistrict litigation. Because we conclude that the order of reference under the statute vested exclusive control in the transferee judge of all matters pertaining to the subject matter of discovery in the cases transferred to her, and because we conclude that the transferee court did not abuse its discretion in vacating the earlier orders of the transferor judges, we affirm.

The underlying litigation concerns products liability claims by certain users of the antibiotic clindamycin, marketed by Upjohn

as Cleocin, that the drug produced certain harmful side effects upon the users.

The multidistrict proceedings at present involve ten actions filed in eight United States District Courts throughout the nation, in each of which Upjohn is the principal defendant. Before the ten cases were consolidated by the panel on multidistrict litigation, protective orders had been entered in three actions, two in the Eastern District of Louisiana and one in the District of South Carolina. The three protective orders generally restricted the use of materials gained by plaintiffs in discovery proceedings to parties involved in the immediate litigation and prevented the materials from being revealed to others or being otherwise used outside that litigation. In issuing the orders, the district courts relied upon the authority conferred upon them to protect discovery for "good cause" as provided in F.R.Civ.P. 26(c). The order entered in the South Carolina litigation was by stipulation of the parties.

In an order and opinion, reported at 450 F.Supp. 1168, the Judicial Panel on Multidistrict Litigation ordered transfer of the ten cases to the United States District Court for the Eastern District of Michigan for consolidated pretrial proceedings, and, with her consent, assigned them to Judge Kennedy.

Thereafter, the plaintiffs in one of the Louisiana cases, *Escher v. Upjohn*, moved to vacate the protective order which had earlier been entered by the original trial judge. The primary purpose of the motion was to allow the discovery materials to be used in those cases consolidated as part of the multidistrict litigation. The movant particularly called Judge Kennedy's attention to the report of the Panel:

> We recognize that all actions are not at the same stage of discovery but, based on the information before us, we conclude that the remaining actions in this litigation will all benefit from transfer under Section 1407 ... and, of course, any discovery heretofore completed may be applicable to all actions by utilizing the procedures recommended in the Manual

for Complex Litigation, Parts I and II, § 3.11 (rev. ed. 1977)

450 F.Supp. at 1170.

On January 18, 1979, Judge Kennedy issued her cited opinion, granting the plaintiffs' motion to vacate the protective order entered by the transferor court. In so doing, she found that protective orders would present problems in the use of expert medical testimony, and that the additional time and expense of duplicating discovery would pose a burden upon parties whose individual recovery was likely to be small. With this much of the order Upjohn has no quarrel. However, Judge Kennedy also vacated the challenged orders to the extent that they prohibited the use of discovery to litigants who were not parties in the multidistrict litigation.

The question of whether to extend the protective orders was raised when counsel in one of the multidistrict cases, *Stavro v. Upjohn Company*, indicated that he had as well three Cleocin cases pending in the Michigan state courts, and he desired to use the evidence gained in the federal discovery in aid of his state actions against Upjohn. He also frankly proposed to sell or otherwise allocate the cost of the federal discovery among all of his clients, including those in the state litigation. It does not appear that there is any essential difference in the nature of the state and federal cases, the forum being determined by whether diversity jurisdiction existed in the particular lawsuit.

Judge Kennedy confronted the issue and refused both to continue the ban against use as it existed in the three cases and to extend it to the remaining cases transferred to her:

> To distinguish between the two situations [cases involved in the multidistrict litigation and cases outside of it] would be to make a distinction on the basis of citizenship, a distinction which does not appear to have been intended. Where the parties have had similar interests and motives in the various cases, then it would appear that their rights have been adequately protected and there is no reason

not to make the discovered materials available. 81 F.R.D. at 484. Judge Kennedy expressly found that the record revealed no showing of special circumstances or substantial and serious harm which might constitute "good cause" under Rule 26. In fact, it appears that more than fifty percent of the documents produced under protective order in *Escher* had also been produced without any such limitations in the discovery in the state cases. At the same time, Judge Kennedy showed herself sensitive to the potentiality for abuse of the federal discovery process. Thus she expressly provided that her ruling was not intended to restrict any effort on Upjohn's part to obtain protective orders in the state cases. Further, she provided that before any information should be released to parties in non-multidistrict cases, the plaintiffs should inform the court of the terms upon which the information was to be supplied with sufficient attendant information to enable her to monitor its use and thus protect against potential abuse.

■ Upjohn does not challenge the order in its entirety. It instead asserts but one issue in this appeal, which it thus characterizes:

Did the District Court, as a transferee court in multidistrict litigation, err in totally vacating a transferor court's order enjoining extra-multidistrict use and disclosure of confidential documents?

The difficulty with so framing the question is readily apparent. First, while it is true that the order was totally vacated, it is also true that the transferee court made at least two provisions to protect against possible abuse, by its provisions for monitoring the outside use of the discovery and by leaving the way open to Upjohn to seek a protective order in the state proceedings. Second, the question assumed the existence of confidential documents in the face of contrary findings by the district court which are not clearly erroneous in our judgment. Third, in posing the question as one of error, the appellant does not endeavor precisely to define the basis for its complaint.

We understand from a reading of Upjohn's briefs and from its oral argument that it does not contend that Judge Kennedy was without jurisdiction, in the sense of raw judicial power, to enter or vacate the protective orders involved here, in the normal course of her duties as judge of the transferee court. Indeed, it would be difficult to make out such a case, given the nature of the statute and the powers to oversee discovery conferred upon the district court generally. Nor does it particularly claim that it would have been an abuse of discretion to have permitted extra-multidistrict use of the exchange of information between documents absent the prior exercise of the power by the transferor court. Instead, Upjohn urges that "the question now is whether given those valid [protective] orders [issued by the transferor court before transfer], the transferee court erred in deciding to even entertain plaintiffs' request to vacate those orders *in toto*."

There is, at first blush at least, some arguable merit in the claim that it is really none of the transferee court's business that the transferor court has earlier prohibited access to the discovery information by parties outside the multidistrict litigation. After all, the Panel's interest in consolidating discovery is to assist the parties to the cases so transferred. Neither it nor the transferee judge, nor indeed a plaintiff, has any particular obligation to act as Good Samaritan to other parties in other litigation not subject to the order of transfer. It is also true that the transferor court must ultimately be responsible for the final resolution of the dispute upon remand, and might seem to be better positioned to forsee and thus avoid the possible abuse of the discovery by its dissemination to outsiders. It can also be said that there is something unseemly in allowing plaintiffs to relitigate an issue which has already been fairly and fully heard in another court, even more in permitting one judge to overrule another in a matter in which each would seem to have stood on an equal footing. Upjohn couches these several arguments in a manner which suggests that the transferee judge ought, as the only appropriate exercise of discretion which might otherwise have existed, to

have abstained from disturbing the transferor court's discretion, once exercised, on the basis that to interfere would violate principles of comity. Finally, it condemns relitigation of the issue by urging most strongly that the transferee court was precluded from acting by what it terms as "the law of the case."

Despite the surface appeal of these arguments, we remain unpersuaded.

■ While we know of no cases construing the exact boundaries of the rule, it would seem that the power of the Panel on Multidistrict Litigation under 28 U.S.C. § 1407 to transfer district court proceedings from one court to another should divest the transferor court of any further authority, at least in matters pertaining to discovery. It would be completely disruptive of the purposes of the Act to hold that the transferor court can act in matters of discovery independently of the transferee court, at least until the proceedings are finally remanded to it. U.S.C. § 1407(b) provides in part:

The judge or judges to whom such actions are assigned, the members of the judicial panel on multidistrict litigation, and other circuit and district judges designated when needed by the panel *may exercise the powers of a district judge* in any district for the purpose of conducting pretrial depositions and such coordinated or consolidated pretrial proceedings.

(emphasis added).

■ Likewise, we believe it cannot be successfully urged that a transferee court is without power to modify or even vacate a protective order once entered when circumstances so dictate. Clearly, the power of a district judge includes the power to modify a protective order. *See, e. g., American Telephone and Telegraph Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978) *cert. denied,* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979). *See also Wilk v. American Medical Association*, 635 F.2d 1295, 1299 (7th Cir. 1980):

We therefore agree with the results reached by every other appellate court which has considered the issue, and hold that where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification.

Therefore, if the judicial power to modify a protective order exists, it must be capable of being exercised on need, and in cases where the proceedings have been transferred, it must follow that such power must then pass to the transferee judge. It cannot exist in a vacuum. This conclusion is buttressed by the express language in the statute conferring all powers of the district judge upon the transferee judge.[1]

This same logic dispels any notion that the transferee judge's exercise of power is somehow offensive to the transferor court or breaches notions of comity. In a very practical sense, we doubt that such thoughts would even come to the mind of the transferor court, which is probably relieved to be rid of the responsibility. Any transferor court is bound to recognize that the duties of a transferee judge include the responsibility to harmonize the activities relating to discovery in cases which, though similar in nature, come to it from all parts of the country and in widely variant postures of preparedness. We believe that no thoughtful judge will begrudge another's efforts to achieve this object of the Act simply because he or she might have gone about it somewhat differently. We can agree that a transferee judge will want to

---

1. Judge Kennedy also suggested that entry of protective orders in discovery matters potentially raised questions of prior restraints in violation of First Amendment principles. *See* 81 F.R.D. at 486, *citing CBS v. Young*, 522 F.2d 234, 241 (6th Cir. 1975); *In re Adele Halkin*, 598 F.2d 176 (D.C.Cir.1979). In affirming here, we expressly do not rely upon this rationale, noting that the dissenting opinion of Judge Wilkey in *Halkin* raises sufficiently important questions to persuade us to leave that issue to another day for resolution in our circuit. As the issue can be satisfactorily resolved on the basis of sound statutory construction, we see no need to reach the more difficult constitutional issue.

ponder the reasons which may have prompted the earlier action, and no doubt that was done here. To us, such consideration is enough to support modification of an order.

We further find that Upjohn's assertion that there was no conflict in rulings among the cases transferred because no other transferor courts had passed on the issue misses the point. No guarantee of uniform discovery exists despite the fact that all orders given thus far are similar. The presence of protective orders in some of the cases, while not in others, would inevitably create conflicts which the transferee court would have to resolve. If, for example, discovery information obtained in Louisiana before the transfer should be properly transmitted in the course of the multi-state proceedings to counsel in the other cases also transferred, could those counsel then transmit it to state counsel in Louisiana, or would they too be bound by a Louisiana district court order in which they were never accorded an opportunity to be heard? Even if so, what would be the result if it were claimed that the identical information had been obtained without restriction in some other transferor court which had not imposed such a protective order? Clearly, it would seem to us that the transferee judge must necessarily have the final word.

These observations persuade us, finally, that Upjohn's assertion that somehow the "law of the case" forbids the challenged action is equally without merit. The essence of Upjohn's claim in this respect is that, even though the interlocutory nature of the ruling makes it subject by nature to later modification by the same judge, (and thus does not elevate it to the status of *res judicata*), "law of the case" concepts still extend to protect the orders of one judge from change by a successor. Upjohn asserts that this doctrine has been applied to discovery rulings. *See, e. g., Black Panther Party v. Levi*, 483 F.Supp. 251 (D.C.D.C. 1980). *Cf. Catanzaro v. Masco Corp.*, 423 F.Supp. 415, 440 n. 166 (D.Del.1976), *aff'd*, 575 F.2d 1085 (3rd Cir.), *cert. denied*, 439 U.S. 989, 99 S.Ct. 586, 58 L.Ed.2d 662 (1978). At least one court has suggested that the doctrine of the "law of the case" is particularly applicable in the context of multidistrict litigation. In *Philadelphia Housing Authority v. American Radiator and Standard Sanitary Corp.*, 323 F.Supp. 381 (E.D. Pa.1970), an order previously had been entered granting a motion of the defendants to dismiss an antitrust complaint because a certain group of plaintiffs was claimed to have been too remote to recover on a claim of price fixing. The plaintiffs involved in *Philadelphia Housing Authority* were similarly situated to certain others who had been dismissed by the earlier order by an earlier transferee judge in the same district. Judge Alexander Harvey, to whom the case had for some reason been assigned, observed:

> The rule of the law of the case is a rule of practice, based upon the sound policy that when an issue is once litigated and decided, that should be the end of the matter. . . . This principle is particularly applicable to multidistrict litigation in which the presence of a large number of diverse parties might otherwise result in constant relitigation of the same legal issue. Nor is there any apparent reason why the rule of the law of the case should not be applied merely because a different judge has now been assigned to this litigation.

*Id.* at 383.

Assuming that *Philadelphia Housing Authority* makes good sense in its own context, the factual distinctions should be apparent, for here we are not dealing with successor transferee judges who were acting upon dispositive legal issues, but instead upon the power of a transferee judge to act uniformly on matters affecting all of the transferred cases in the face of disparate treatment of transferor courts preceding her. The original decision in *Philadelphia Housing Authority* was made by a judge with responsibility for coordinating multidistrict litigation, and another judge determined it was thus unwise to alter that decision. Conversely, the subject matter of the order entered by Judge Kennedy was uniquely within the area of responsibility

assigned to her by the panel and was being addressed by a transferee court for the first time.

We therefore conclude that, although a transferee judge ought as a practical matter to accord considerable deference to the judgment of the transferor court, the "law of the case", if a proper concept in this context, would not in all events control. Our circuit has recognized that this doctrine is not an inexorable command. *Petition of United States Steel Corp.*, 479 F.2d 489 (6th Cir. 1973). Since discovery orders and protective orders both must necessarily be subject to continuing revision upon change of circumstances, this power and the exercise of it is properly transferred to the transferee court during the period for which that court has responsibility for supervising ongoing discovery.

The procedures employed by Judge Kennedy here represent an altogether appropriate administration of the duties imposed upon her as judge of the transferee court under the Act. Her decision has been cited with approval on at least six occasions by the Panel on Multidistrict Litigation. *See, e. g., In re Alien Children Education Litigation*, 482 F.Supp. 326, 329 (Jud.Pan. Mult.Lit.1979). Given the broad remedial purposes of the Act and the responsibility imposed upon the panel to coordinate the operation of the statute on a national basis, its favorable opinion regarding the administration of the Act by a transferee judge is, in our opinion, entitled to some deference. Moreover, in opting to vacate the earlier order and to substitute for it a more flexible procedure, Judge Kennedy has been sensitive to the concerns both of Upjohn and of the transferor court in protecting against possible abuse. While we do not believe that she was obliged to require sharing of discovery with litigants not party to the multidistrict litigation, it was within her discretion to do so, especially where she perceived that cooperation in this respect would promote the efficient exchange of discovery information in the litigation before her, and where she was unable to per-

ceive any prejudice to Upjohn in doing so. *See* 81 F.R.D. at 483–85.

AFFIRMED.