In re AIR CRASH DISASTER AT DETROIT METROPOLITAN AIRPORT ON AUGUST 16, 1987.

MDL No. 742.

United States District Court, E.D. Michigan, S.D.

May 15, 1989.

Order on Reconsideration June 26, 1989.

See also, D.C., 130 F.R.D. 632.

Charles Brewer, Phoenix, Ariz., Stanley Chesley, Cincinnati, Ohio, Lee Kreindler, New York City, Gerald Lear, Thomas Meehan, Washington, D.C., Richard Schaden, Birmingham, Mich., for plaintiffs' Steering Committee.

Carroll E. Dubuc, Laxalt, Washington, Perito and Dubuc, Washington, D.C., for defendant, Northwest Airlines.

John J. Hennelly, Bryan, Cave, McPheeters & McRoberts, Los Angeles, Cal., Donald E. Shely, Dykema, Gossett, Spencer, Goodnow & Trigg, Detroit, Mich., for defendant, McDonnell Douglas.

## ORDER

JULIAN ABELE COOK, Jr., Chief Judge.

On May 5, 1989, the Defendant, Northwest Airlines, Inc. (Northwest), filed an "Emergency Motion ... to Compel McDonnell Douglas Corporation [MDC] to Produce a Nine–Track Computer Tape of the Digital Flight Guidance Computer Flight Director Program Simulation Runs." MDC filed its opposition papers on May 11, 1989. For the following reasons, Northwest's motion is granted.

In its Order dated March 23, 1989, this Court directed MDC to produce documents relating to the simulation runs that had been conducted by MDC, which included simulation runs of the MD–80 flight director. Subsequently, MDC provided the simulator material in a hard copy printout of the Flight Director simulation run program and data. Northwest currently moves the Court to compel MDC to produce the simulation run program and data on a computer-readable nine-track magnetic tape.

In support of its request, Northwest contends that it will be "extremely difficult for [its] expert to re-create these runs or form an informed opinion as to certain aspects of the Flight Director's operation on the Accident Flight" without a nine-track tape. Northwest asserts that "[w]ithout a tape, [its expert] would be forced to load manually approximately 95 pages of single-spaced printout of the program and underlying data onto a nine-track tape, check the input for accuracy, and spend substantial time debugging the program." Although MDC disagrees, Northwest also claims that the program and data, which is the subject matter of this motion, cannot be optically scanned with reasonable accuracy.

In opposition, MDC avers that it does not currently possess the requested nine-track computer tape. MDC maintains that the Federal Rules of Civil Procedure do not require parties to create requested discovery, but merely requires parties to produce existing discovery materials. *See Securities & Exchange Comm'n v. Canadian Javelin, Ltd.,* 64 F.R.D. 648 (S.D.N.Y. 1974); *Soetaert v. Kansas City Coca Cola Bottling, Inc.,* 16 F.R.D. 1 (W.D.Mo.1954). Finally, MDC argues that the documents regarding the MD–80 simulation runs, which it has submitted to Northwest, is sufficiently in accord with previous orders of this Court. Hence, it believes that further discovery regarding this issue is unnecessary. *See Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 933 (9th Cir.1982) (party not compelled to produce computer tapes where previously produced wage cards included information sought. "While using the cards may be more time consuming, difficult and expensive, these reasons, of themselves, do not show that the trial judge abused his discretion in denying the tapes.").

In resolving the instant motion, this Court finds the rationale in *National Union Electric Corp. v. Matsuhita Electric Industrial Co., Ltd.,* 494 F.Supp. 1257 (E.D.Pa.1980) to be persuasive. In *National Union,* the defendant moved the court to require the plaintiff's computer experts to perform the work that would be necessary in order to create a previously non-existant computer readable tape containing

certain data that had been supplied in printed form. In granting the movant's motion to compel, the *National Union* court reasoned:

> While a printout might be "reasonably usable" within the meaning of Rule 34, the production of a party's data in a form which is directly readable by the adverse party's computers is the preferred alternative, according to the editors of the Manual for Complex Litigation.
>
> Although there may be some differences between requiring the production of existing tapes and requiring a party to so program the computer as to produce data in computer-readable as opposed to printout form, we find it to be a distinction without a difference, at least in the circumstances of this case....
>
> ... To interpret the Federal Rules, which, after all, are to be construed to "secure the just, speedy, and *inexpensive* determination of every action," F.R.Civ.P. 1, (emphasis added), in a manner which would preclude the production of material such as is requested here, would eventually defeat [the] purpose [of those who drafted the Federal Rules].

*Id.* at 1262–63.

This Court adopts the reasoning of the court in *National Union* and orders MDC to duplicate the flight director program and data on a nine-track tape as requested by Northwest. By producing the computer-readable nine-track tape, MDC can reduce the unnecessary costs and delays that would accrue if Northwest were required to manually load the program and accompanying data. In addition, and on the basis of the pleadings which have been submitted in connection with this motion to compel, it would not be unduly burdensome for MDC to produce the data in a computer-readable form.

For the foregoing reasons, this Court grants Northwest's motion to compel MDC to produce a nine-track computer tape of the Digital Flight Guidance Computer Flight Director Program Simulation Runs. However, because the requested discovery material does not currently exist, Northwest is directed to pay all reasonable and necessary costs that may be associated with the manufacture of the computer-readable tape.

IT IS SO ORDERED.

## ON MOTION FOR RECONSIDERATION

On May 30, 1989, the Defendant, Northwest Airlines, Inc. (Northwest), filed an "Emergency Motion for Reconsideration of the Order of May 15, 1989, and for an Order Authorizing [It] to Provide Certain Documents and Deposition Testimony to the National Transportation Safety Board (NTSB)." On June 9, 1989, McDonnell Douglas Corporation (MDC), Texas Instruments, Inc. (TI), and Honeywell, Inc. (Honeywell), a non-party to this multi-district litigation, filed pleadings in opposition to the instant motion. This request for reconsideration is now before the Court for a decision.

I

On May 8, 1989, Northwest filed an "Emergency Motion for an Order Authorizing [It] to Provide Certain Documents and Deposition Testimony to the [NTSB]." In essence, Northwest requested this Court to modify two protective orders which govern the scope of discovery and authorize the transmittal of certain information and documents that had been obtained during discovery to the NTSB. In support of its request, Northwest asserted that this discovery information was necessary in order to (1) adequately reply to a February 17, 1989 petition by MDC to the NTSB for reconsideration of its findings and recommendations concerning the Flight 255 matter, and (2) factually support its own upcoming petition for reconsideration with the NTSB.

In addressing Northwest's motion, this Court noted that it "recognizes the strong societal interest in a thorough, complete, and accurate NTSB investigation of airplane accidents.... [H]owever, the goal of providing complete information to the NTSB regarding the Flight 255 accident runs in direct conflict with the goal of assuring free and open discovery in the instant dispute." *In re Air Crash Disas-*

*ter at Detroit Metropolitan Airport,* MDL No. 742, at 3–4 (E.D. Mich. May 15, 1989). In an effort to balance the competing interests involved, this Court concluded that any party who seeks to modify a protective order in this case

> bears the heavy burden of (1) identifying with great specificity the precise section of the document sought to be presented to the NTSB, (2) establishing the relevance of the section to the issues before the NTSB, (3) proving that it cannot adequately present its theory of causation to the NTSB absent the presentation of the document(s), and (4) proving that no alternative means of obtaining the information in the document(s) exists.

*Id.* at 4–5.

This Court found that Northwest had failed to present those particularized proofs that are requisite to a modification of either protective order at issue. Hence Northwest's request to present certain discovery documents and information to the NTSB was denied. Thereafter, Northwest filed the instant motion for reconsideration. In order to succeed in such a motion, the movant must demonstrate a "palpable defect" in the decision to such an extent that "a different disposition of the case must result from a correction thereof." Local Rule 17(m)(3).

## II

In its current motion for reconsideration, Northwest maintains that the Order of May 15, 1989 incorrectly placed the burden on the party, who initiated the request, to justify its application for a modification of the protective orders. In support of its position, Northwest cites to paragraph 5 of Practice and Procedure Order Number 4, the protective order entered on August 9, 1988, which provides:

> [T]o maintain the confidential or proprietary status, the proponent of such status must carry the burden of proof that there is good cause for the document to have such protection.

However, a review of the August 9th protective order does not support Northwest's contention. Paragraph 1 of the pro-

tective order, which is a general provision pertaining to all documents that were obtained during discovery, provides, in part:

> No document or information produced or to be produced by any party in connection with this litigation ... shall be used for any purposes except the purposes of this litigation, including trial preparation and trial.

In the following paragraph, the Court directs the parties to (1) the means of designating certain documents to be "confidential and proprietary" and (2) the effects of such a designation:

> Any party may stamp, mark or otherwise designate any document or information which are confidential and proprietary pursuant to Fed.R.Civ.P. 26(c) and which are produced or to be produced by it in connection with this litigation as "Confidential and/or Proprietary—Subject to Protective Order in MDL No. 742, U.S. District Court for the Eastern District of Michigan." No document designated as "confidential" or "proprietary," including information contained therein, shall be furnished, shown, or disclosed to any person except: (1) counsel for the parties to this action and paralegals and other professional personnel assisting those attorneys in the preparation and trial of this action; (2) persons and experts who are assisting said counsel in preparation and trial; and (3) witnesses and experts retained by counsel who may be called to testify at depositions or trial.

Paragraph 5 of Practice and Procedure Order Number 4, which places the burden of establishing "good cause" for the continued protection of "confidential and/or proprietary" documents or information upon the protected party, does not apply to the general protective provision within paragraph 1. This Court construes the provision in paragraph 5 regarding the burden of proof as pertaining only to paragraph 2, which addresses the protection to be given to confidential and/or proprietary documents. This construction of the contract is supported by the literal language of the Order.

Moreover, if this Court adopted the construction of the Order as posited by Northwest, then no effect would be given to the provisions of paragraph 1 and would render it as a mere restatement of paragraph 2. Therefore, this Court concludes that (1) the protective order does encompass all of the documents and information which were produced by the parties in connection with this litigation and (2) contrary to Northwest's contention, paragraph 5 of that order is not dispositive as to which party has the burden of establishing cause for either continued protection or modification of the order.

■ Northwest also contends that the "general case law regarding protective orders" supports its position that the burden of establishing continued protection lies with the protected party. However, a review of the case law within the Sixth Circuit relative to this issue reveals that the burden is upon the party, who seeks a modification of a protective order, to show sufficient cause to justify the request.

The Sixth Circuit Court of Appeals has stated that "[c]learly, the power of a district judge includes the power to modify a protective order." *In re Upjohn Co. Antibiotic Cleocin Products, Etc.,* 664 F.2d 114, 118 (6th Cir.1981); *see also Krause v. Rhodes,* 671 F.2d 212, 219 (6th Cir.), *cert. denied sub nom., Attorney General of Ohio v. Krause,* 459 U.S. 823, 103 S.Ct. 54, 74 L.Ed.2d 59 (1982). On the one hand, it is well established that when a party accumulates information during discovery, "the fruits of that inquiry should be available to the public." *Omega Homes, Inc. v. Citicorp. Acceptance Co.,* 656 F.Supp. 393, 403 (W.D.Va.1987) *(citing American Tel. & Tel. Co. v. Grady,* 594 F.2d 594, 596 (7th Cir.1978), *cert. denied sub nom., American Tel & Tel Co. v. MCI,* 440 U.S. 971, 99 S.Ct. 1533, 59 L.Ed.2d 787 (1979)); *see also Nixon v. Warner Communications, Inc.,* 435 U.S. 589, 597, 98 S.Ct. 1306, 1311, 55 L.Ed.2d 570 (1978); *Sharjah Inv. Co. (UK) Ltd. v. P.C. Telemart, Inc.,* 107 F.R.D. 81, 82 (S.D.N.Y.1985). Yet, this principal conflicts with the well recognized maxim that [e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not ... [used] as [a] source[ ] of business information that might harm a litigant's competitive standing.

*Nixon,* 435 U.S. at 598, 98 S.Ct. at 1312 (citations omitted).

This Court is mindful that "[i]n considering motions to modify protective orders, courts are split as to whether the burden of showing good cause for continued protection lies with the protected party or with the party seeking a modification." *Omega Homes,* 656 F.Supp. at 403 (citations omitted). However, the decision of the Sixth Circuit Court of Appeals in *Meyer Goldberg, Inc. of Lorain v. Fisher Foods,* 823 F.2d 159, 163 (6th Cir.1987) (quotation omitted) is instructive on the requisite burdens involved:

Given that proceedings should normally take place in public, imposing a good cause requirement on the party seeking modification of a protective order is unwarranted. If access to protected fruits can be granted without harm to legitimate secrecy interests, or if no such interests exist, continued judicial protection cannot be justified. In that case, access should be granted even if the need for the protected materials is minimal. When this is not the case, the court should require the party seeking modification to show why the secrecy interests deserve less protection than they did when the order was granted. Even then, however, the movant should not be saddled with a burden more onerous than explaining why his need for the materials outweighs existing privacy concerns.

In this multi-district litigation, it is clear that public disclosure of documents and information which were obtained during discovery invoke the "legitimate secrecy interests" of MDC, TI, and Honeywell. The disclosure of various production techniques and research to marketplace com-

petitors may harm the competitive standing of these corporations. Therefore, according to *Fisher Foods*, Northwest has the burden of explaining why its needs outweigh existing privacy concerns.

In its previous Order, this Court recognized that there is a strong social interest in allowing the NTSB to conduct a thorough, complete, and accurate invesitgation of the Flight 255 matter. This interest supports Northwest's request to allow it to submit various information and documents, which were obtained during discovery pursuant to the protective orders, to the NTSB. However, this Court also noted that "the goal of providing complete information to the NTSB regarding the Flight 255 accident runs in direct conflict with the goal of assuring free and open discovery in the instant litigation." The privacy interests in this case are particularly acute given the technical nature of the information disclosed. Therefore, this Court determined that in order for Northwest to affirmatively establish that its "need for the materials outweighs existing privacy concerns," it

> bears the heavy burden of (1) identifying with great specificity the precise section of the document sought to be presented to the NTSB, (2) establishing the relevance of the section to the issues before the NTSB, (3) proving that it cannot adequately present its theory of causation to the NTSB absent the presentation of the document(s), and (4) proving that no alternative means of obtaining the information in the document(s) exists.

*In re Air Crash Disaster at Detroit Metropolitan Airport on August 16, 1987*, MDL No. 742, at 5 (E.D.Mich. May 15, 1989).

The case of *In re Upjohn Co. Antibiotic Cleocin Products*, 81 F.R.D. 482 (E.D. Mich.1979), *aff'd*, 664 F.2d 114 (1981), which has been cited by Northwest in support of its motion, is factually and legally inapposite to the case at bar. *Upjohn* involved ten cases that were transferred to the United States District Court for the Eastern District of Michigan for pretrial consolidated before then District Judge Cornelia G. Kennedy. Prior to this consolidation, three of the transferor courts had entered protective orders that "generally restricted the use of materials gained by the plaintiffs in discovery proceedings to parties involved in the immediate litigation and prevented the materials from being revealed to others or being otherwise used outside that litigation." *Upjohn*, 664 F.2d at 116.

Judge Kennedy vacated the transferor courts' protective orders and allowed the plaintiffs in the federal multi-district litigation and their counterparts in the independent state cases to use discovery material in pursuing their claims. The decision to lift the protective order and allow the state claimants to share discovery information with the federal multi-district litigants was based on the following reasoning:

> [Federal Rules of Civil Procedure 27(a)(4) and 32(a) ] do not address the question of whether discovery may be shared between a federal and state case on the same basis as between two federal cases. To distinguish between the two situations would be to make a distinction on the basis of citizenship, a distinction which does not appear to have been intended. Where the parties have had similar interests and motives in the various cases, then it would appear that their rights have been adequately protected and there is no reason not to make the discovered materials available.
>
> Nor can it be said that the plaintiffs in this complex litigation case have no interest in the use of multi-district discovery beyond these cases. Parties in other litigation may have knowledge of facts relevant to plaintiffs' claims. Plaintiffs should be in a position to exchange information with other litigants with similar claims in order to develop their cases more fully.

*Upjohn*, 81 F.R.D. at 484.

The concerns that persuaded Judge Kennedy to lift the protective order in *Upjohn* focused on (1) whether diversity of citizenship should serve as the basis for determining which plaintiffs may share in discovery material, (2) the "similar interests and mo-

tives" of the entities requesting to share the information, and (3) a desire to allow the plaintiffs to develop their cases more fully. Clearly, these concerns are not relevant to Northwest's request to modify two protective orders of this Court in order that it can provide discovery information to an entity that is not a party to a pending lawsuit, such as the NTSB.

In addition, this Court notes that the *Upjohn* Court applied a very narrowly tailored burden of proof which differs from the requisite burden that applies in the case sub judice. On review of the *Upjohn* decision, the Sixth Circuit Court of Appeals cited the following proposition with approval:

> We therefore agree with the results reached by every other appellate court which has considered the issue, and hold that where an appropriate modification of a protective order can place private litigants in a position they would otherwise reach only after repetition of another's discovery, such modification can be denied only where it would tangibly prejudice substantial rights of the party opposing modification.

*Upjohn*, 664 F.2d at 118.

The *Upjohn* Court instructs that the party, who opposes a modification of a protective order, must assume the burden of proof when a party in a pending case seeks to use discovery information that had been obtained pursuant to a protective order in a parallel case. In contrast, the Sixth Circuit Court of Appeals stated in a case, which was factually distinct from *Upjohn*, that when "legitimate secrecy interests" are involved, the party requesting a modification, such as Northwest, must "show why [its] needs for the materials outweighs existing privacy concerns." *Fisher Foods*, 823 F.2d at 163. Therefore, this Court concludes that neither the reasoning, the holding, nor the requisite burden of proof in *Upjohn* supports Northwest's instant request.

Therefore, this Court concludes that placing the burden on Northwest with regard to the requested modification of two prior protective orders in this litigation did not constitute a "palpable defect" to such an extent that a "different disposition of the case must result from a correction thereof." Local Rule 17(m)(3). Accordingly, Northwest's motion for reconsideration of this Court's Order of May 15, 1989 must be denied.

### III

In the alternative, Northwest also attempts to satisfy the four part test as to particular documents and information that it desires to present to the NTSB. However, given the time constraints that are associated with the resolution of the instant motion, it would be judicially inefficient and unduly time consuming for this Court to undertake the extremely arduous task of reviewing the specific requirements as to each document, considering opposing briefs, and issuing a written opinion in this matter.

Therefore, this Court directs the parties to present an oral argument on June 27, 1989 at 11:00 a.m. regarding the issue of whether Northwest has satisfied the four part test as to each document that it seeks to present to the NTSB. Rather than to require the interested parties to appear at the United States Courthouse in Detroit, Michigan on the above scheduled date, the hearing in this matter will be conducted by the Court pursuant to a telephone conference call.[1]

IT IS SO ORDERED.

---

1. All of the parties and non-parties, who filed papers pertaining to the instant motion, may participate in this hearing. Those attorneys who intend to participate in this conference call should immediately contact this Court and identify a telephone number where he/she can be reached at the time and on the date of the hearing.