**Najah MELHELM, et al., Plaintiffs,**

v.

**MEIJER, INC., et al., Defendants.**

**No. C–3–01–128.**

United States District Court,
S.D. Ohio,
Western Division.

Feb. 26, 2002.

---

David Deutsch, Dayton, OH, for plaintiffs.

Erin Moore, Jane Lynch, Lynnette Ballato, Dayton, OH, for defendants.

DECISION AND ENTRY OVERRULING DEFENDANT MEIJER, INC.'S MOTION FOR PROTECTIVE ORDER (DOC. # 13) WITHOUT PREJUDICE [1]

RICE, Chief Judge.

The issue herein is Defendant Meijer, Inc.'s ("Meijer") Motion for Protective Order (Doc. # 13). Plaintiffs Najah Melhelm ("Melhelm") and Hani Melhelm filed a complaint in the Montgomery County Common Pleas Court setting forth four causes of action: 1) false arrest and imprisonment; 2) defamation; 3) intentional infliction of emotional distress; and 4) loss of consortium. Melhelm subsequently amended her complaint ("First Amended Complaint")(attached to Doc. # 1) to add two claims: violation of federal constitutional rights, brought under 42 U.S.C. § 1983; and a state and federal constitutional challenge to Ohio Rev.Code § 2744.01 et seq. Following the filing of her First Amended Complaint, Meijer, along with Defendants City of Englewood, Ohio, Dr. Michael Bowers, Patricia Burnside, James Campise, Thomas Franz, Judy Gerhard, Michael Kline, James McGraw, and Officer Peggy Obermeyer (collectively, "the Englewood Defendants"), removed the action to this Court pursuant to the 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1441 (removal jurisdiction).

The facts giving rise to this action can be summarized as follows.[2] On February 8, 1999, Melhelm was shopping at Meijer in Englewood, a store which she frequented. At the checkout line, Melhelm attempted to pay for her items with a $100 bill, but the cashier, after examining the bill, did not accept the tender on account of his suspicion that the bill was counterfeit. An in-store investigation of the bill was conducted, during which time Melhelm was asked by the cashier to stay put. An Englewood police officer was summoned, and upon the officer's arrival at the store, further discussions were had and inquiries of Melhelm made. For her own part, Melhelm telephoned her husband from the store, and he also came to the scene to support his wife. Eventually, the Englewood police officer at the scene, Officer Obermeyer, was instructed by her dispatcher to transport Melhelm to the police department headquarters where a Secret Service agent was to continue the investigation of the suspicious bill. Accordingly, Obermeyer arrested Melhelm and transported her to the headquarters in the back of the police cruiser. Ultimately, the Secret Service agent determined that the bill was not a counterfeit, and Melhelm was released.

## I. Meijer's Motion for Protective Order (Doc. # 13)

The basis for Meijer's Motion for Protective Order (Doc. # 13) concerns an issue previously addressed in the state court. Prior to the removal of this action, a discovery dispute arose in the state court concerning certain interrogatory and document requests served upon Meijer by Melhelm. After Meijer replied to said requests with various objections or claims of privilege, Melhelm moved to compel that discovery. In turn, the state court ruled on the matter, in large part overruling Melhelm's motion. (See Doc. # 13 at Ex. A.) By and large, the requests for production were denied by the state court for one of two reasons, to wit, they were either too broadly drawn and therefore unduly burdensome, or they concerned matters which were privileged.[3]

Since removal, Melhelm has served upon Meijer a subsequent set of both interrogatories and document requests. These requests, according to Meijer, in large part merely resuscitate those requests already rejected by the state court. (Compare Doc.

---

1. This Decision has been edited for publication by the Court.

2. For purposes of ruling on Meijer's Motion for Protective Order, the facts as alleged in the First Amended Complaint are accepted as true. For the sake of developing context, additional facts are drawn from parties' briefs.

3. The Motion to Compel upon which the state court ruled was filed in that court on June 16, 2000. Said Motion concerns separate subject matter than that with which Plaintiffs' pending Motion to Compel, discussed below, is concerned. This latter Motion was filed in the state court on January 24, 2001, and, so far as the Court can discern, was neither opposed by Meijer nor ruled upon by the state court.

# 13 at Ex. B *with id.* at Ex. C.) Indeed, Meijer has included in its Motion a chart tracking the parallel interrogatory and document requests. (Doc. # 13 at 3–4.) Meijer moves for a protective order on the basis that the issues underlying the merits of the more recently served interrogatory and document requests have already been decided by the state court. It recognizes that the principle of collateral estoppel, or issue preclusion, by which courts generally decline to pass a second time on issues already fully litigated by the same parties, does not apply in its pure sense, but that this Court should draw an analogy to that principle, and decline to order discovery where the state court had determined that such was not warranted. (Doc. # 13 at 4–5.)

Melhelm responds by arguing that, upon removal, the rules of procedure which governed discovery in the state court ceased applying in this case. She further contends that to the extent the state court recognized certain privileges as barring the discovery of some of the information she seeks, that ruling no longer controls, and that, in this Court, pursuant to federal law, the privileges recognized by the state court do not exist.

In rebuttal, Meijer raises a fresh rationale for why the Court should not sanction Melhelm's discovery requests by overruling its Motion for Protective Order. Citing Rule 501 of the Federal Rules of Evidence for support, it argues that because the claims against Meijer are only ones which arise under state law,[4] state rules concerning privileges apply, such that the state court's prior ruling as to such privileges must govern. As an additional matter, Meijer argues that the state court's rulings as to those requests it found to be unduly burdensome should be adopted by this Court, given that there is no substantial difference between Ohio and federal law in this area.

Finally, in surrebuttal,[5] Melhelm contends that because this case was removed pursuant to federal question jurisdiction (28 U.S.C. § 1331), federal procedural rules govern the applicability of privileges.

Aside from its argument that the state court's rulings as to the requests it found to be unduly burdensome should be adopted by this Court, an argument which seems to have been inserted into its Reply (Doc. # 16) more as an afterthought than anything else, Meijer has not submitted any fresh substantive arguments on the merits of Melhelm's discovery requests.[6]

Two issues are raised in the pertinent filings. *First,* there is the question of whether the state court's earlier ruling should have any preclusive effect. *Second,* there is the question of whether state or federal rules of procedure apply for purposes of discovery once a claim has been removed to federal court from state court. Having considered the matter, the Court agrees with Melhelm that the state court ruling has no bearing on the merits of Melhelm's post-removal discovery requests, and, what is more, that federal not state law controls.

## A. *Issue Preclusion Does Not Apply*

The application of the issue preclusion doctrine, historically referred to as collateral estoppel, rests upon a showing of four elements: (1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceed-

---

4. The Court shall assume that Meijer, as a private entity, considers itself not to be implicated by the allegations of the Fifth and Sixth Claims for Relief of the Amended Complaint, which concern liability under 42 U.S.C. § 1983, and the constitutionality of Ohio Rev.Code § 2744.01 *et seq.,* respectively, and which serve as the basis for removal. Melhelm does not contest this conclusion.

5. Because Meijer's Reply Memorandum (Doc. # 16) raised a new line of argument, the Court sustained Melhelm's Motion for Leave to Respond thereto (Doc. # 18). (Notation Order of August 20, 2001.)

6. At page four of its Motion (Doc. # 13), Meijer expressly adopts its arguments made before the state court into its argument herein.

ing. *See Smith v. Securities and Exchange Comm'n*, 129 F.3d 356, 362 (6th Cir.1997).

■ For two reasons, the Court finds that the issue preclusion doctrine does not apply. To begin with, as Meijer readily admits, the doctrine is inapplicable as a matter of doctrinal purity. This dispute, as addressed both in the state court, and now in this Court, concerns a discovery issue, not a true litigation issue. Furthermore, and consistent with this principle, the state court's ruling was not a judgment; it did not go to, and therefore was not dispositive of, a merits issue.

Furthermore, and perhaps of even greater relevance, is the fact that the issue preclusion doctrine applies to *subsequent* cases. Removal of a case, however, does not engender a new case; it merely shifts the case from one forum to another. *See Payne v. Churchich*, 161 F.3d 1030, 1037 (7th Cir.1998). Herein, if anything, the law of the case doctrine controls, not issue preclusion. *See id.* At first glance, this fact seems to favor Meijer, for the law of the case doctrine provides that an issue decided at an earlier stage of litigation, either explicitly or by necessary inference from the disposition, constitutes the law of the case. *See Equal Employment Opportunity Comm'n v. United Assoc. of Journeymen and Apprentices of the Plumbing and Pipefitting Indus. of the United States and Canada, Local No. 120*, 235 F.3d 244, 249 & n. 1 (6th Cir.2000)("The law of the case doctrine applies with equal vigor to the decisions of a coordinate court in the same case and to a court's own decisions."). Despite its facile appeal, however, the law of the case doctrine does not inure to Meijer's benefit in this instance. " 'It is well established that the interlocutory orders and rulings made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment....' " *Polec v. Northwest Airlines, Inc.*, 86 F.3d 498, 518 (6th Cir.1996)(quoting *In re "Agent Orange" Product Liability Litig.*, 733 F.2d 10, 13 (2d Cir.1984)).

The Sixth Circuit addressed a similar fact pattern in *In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation*, 664 F.2d 114 (6th Cir.1981). Therein, multiple cases from several districts were consolidated in the lower court. The question presented on appeal was whether the transferee court had the power to modify or even vacate a protective order that had been issued by one of the transferor courts. The appellate court made several decisions. *First*, it held that once a case is transferred from one district to another, the transferor court's authority to control discovery is divested. *Id.* at 118. *Second*, it held that the power of a judge clearly allows him or her to modify or even vacate a protective order, and that this power passes to the transferee court judge upon the case's transfer. *Id. Third*, and finally, it held that the law of the case doctrine does not control in the area of discovery orders. *Id.* at 119 (recognizing, but not following, contra decisions). The court recognized that "discovery orders and protective orders both must necessarily be subject to continuing revision upon change of circumstances." *Id.* at 120.

In the absence of any citations to persuasive contra authority, the Court is persuaded on its own that the logic of *Upjohn* applies in cases of removal, at least in the present context. While the *Upjohn* court was concerned with the plight of a transferee court judge who would be left unable to take charge of tedious litigation were his power to direct discovery limited, issues of a similar magnitude present themselves when a case shifts from state to federal court, not the least of which is the fact that a different set of procedural rules apply (as will be discussed in more detail below). A removing defendant cannot have the best of both worlds: it cannot seek at once to avail itself of the best of both federal and state jurisdiction; it can have only one, and not the other, at a given time.

Accordingly, the Court finds that it is not bound to the prior discovery ruling issued by the state court, under either the issue preclusion or the law of the case doctrine. This is not to say that all deference to the state court, and all matters of comity in general, should be disregarded when a case is removed. *See, e.g., id.* It is only to say that the court to which removal is had has the discretion to revisit a discovery issue.

## B. *Federal Law Applies to Matters of Privilege*

In this case, the Court agrees with Melhelm that, upon removal, Meijer subjected itself to a different set of procedural rules, including those concerning privilege.

Fed. R. Evid. 501 states:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, *the privilege of a witness, person, government, State, or political subdivision thereof* shall be determined in accordance with State law.

(Emphasis added.)

The Court's first observation on this Rule is that even if it said what Meijer's contends it does, it would not apply to all of the rulings issued by the state court. Not all of the "privilege" rulings of the state court pertained to the privileges covered by Rule 501.

To clarify this point, the Court will address the relevant rulings of the state court. (References to "Interrogatory Request" or "Document Request" in this context will be to those submitted and ruled upon in the state court. (*See* Doc. # 13 at Ex. A.).) In Interrogatory Request Nos. 10 and 11, Melhelm sought information from any "incident report" or similar document which Meijer may have completed in response to her incident. The state court ruled that these requests concerned work product, and were thus not proper discovery. Similarly, through her Document Request No. 11, Melhelm sought actual copies of any incident reports that might have been prepared, and, again, such was ruled not proper on the basis that it

sought work product. Document Request No. 12, by which Melhelm sought copies of any written statements given by individual witnesses, was ruled not proper on the basis that it sought work product and/or information governed by the attorney-client privilege. The remaining requests which were ruled not proper were found to have imposed an undue burden on Meijer.

■ Thus, to the extent Meijer claims a "privilege,"[7] the discoverability of two forms of evidence is at issue: 1) information contained in any incident report or reports which may have been prepared by Meijer; and 2) witness statements in the possession of Meijer. Only the latter was ruled upon by the state court as touching upon a privilege, *viz.*, the attorney-client privilege. Insofar as the information sought both then and now is work product, Rule 501 is inapplicable. As the Sixth Circuit has held:

The work-product rule is not a privilege but a qualified immunity protecting from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation. Fed.R.Civ.P. 26(b)(3). Although the rule affords special protections for work-product that reveals an attorney's mental impressions and opinions, other work-product materials nonetheless may be ordered produced upon an adverse party's demonstration of substantial need or inability to obtain the equivalent without undue hardship.

*In re Perrigo Co.*, 128 F.3d 430, 437 (6th Cir.1997)(citing *Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1492 (9th Cir.1989)).

■ The work product doctrine covers a much broader swath of material than the attorney-client privilege; it is not directed toward protecting attorney-client communications, for the attorney-client privilege serves that purpose on its own. The work product doctrine is instead concerned with giving an attorney a sense of confidence that he or she will not be required to reveal his or

---

**7.** Meijer makes it clear that it believes Rule 501 contemplates, as "privileged," both attorney-client communications and attorney work product: "However, particularly with regard to the

attorney-client and work-product privileges asserted by Meijer to plaintiffs' current discovery requests, plaintiffs overlook the mandates of Federal Rule of Evidence 501." (Doc. # 16 at 2.)

her theory of the case prior to trial. Indeed, Rule 26(b)(3) of the Federal Rules of Civil Procedure provides that, generally, documents and tangible items prepared by one party in anticipation of trial may only be obtained by another party upon a showing by the other party that it has a "substantial need" for the materials to prepare its own case and that it would be "unable without undue hardship to obtain the substantial equivalent of the materials by other means."

Therefore, to the extent Meijer invokes Rule 501 herein to support its argument that the rulings of the state court concerning the non-discoverability of certain "work product" control the disposition of its Motion for Protective Order, its argument is not well taken, as the Rule is inapplicable.

■ Even to the extent the information presently sought by Melhelm comes within the attorney-client privilege, Rule 501 favors a ruling for Melhelm, not Meijer, on the issue of which law applies. This case has been removed on the back of a § 1983 cause of action. The state law causes of action included in the First Amended Complaint are pendent thereto. *See* 28 U.S.C. § 1367. Addressing the applicability of Rule 501 in another § 1983 case, the Sixth Circuit held that even where pendent claims exist, the first sentence of Rule 501, not the second, governs, such that federal common law applies, and not the rule of the state from which the law of the pendent claims emanates. *Hancock v. Dodson*, 958 F.2d 1367, 1373 (6th Cir.1992). In other words, in addressing questions of privilege in this case, the Court is to look to "the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience," not the law of the State of Ohio. Fed.R.Evid. 501.

Accordingly, the Court finds that this Court is not bound by the rules of Ohio regarding privilege in ruling on whether certain information is discoverable. It may very well be that upon further consideration, this Court would reach the same conclusions as the state court, but that would be by chance, not obligation. In any event, the Court cannot reach any such conclusions at this time because the arguments proffered by Meijer

are not directed toward the merits of Melhelm's discovery requests. Because the arguments proffered by Meijer address why this Court should defer to the earlier rulings of the state court, and because the record is not sufficiently developed for the Court to consider the merits of Melhelm's discovery requests, Meijer's Motion for Protective Order is not well taken, and it is OVERRULED. This ruling is without prejudice, and Meijer may renew its Motion should it desire to proffer arguments as to why Melhelm's discovery requests should be denied as a matter of federal law.

II. *Conclusion*

For the reasons set forth above, Defendant Meijer's Motion for Protective Order (Doc. # 13) is OVERRULED without prejudice.