### In re PANTOPAQUE PRODUCTS LIABILITY LITIGATION.

### Daryl ABBENT, et al., Plaintiffs,

### v.

### EASTMAN KODAK COMPANY, et al., Defendants.

### Civil Action No. 90–3436 (JCL).

United States District Court, D. New Jersey.

Aug. 29, 1996.

## MEMORANDUM AND ORDER

LIFLAND, District Judge.

The Court is now confronted with a highly unusual situation. Several months ago, the attorney for the *Abbent* plaintiffs, G. Martin Meyers, Esq., filed a motion with the Magistrate Judge, on his own behalf, to enforce a contractual agreement he had made with Marc Edell, Esq., formerly lead plaintiffs' counsel and attorney for certain pantopaque plaintiffs whose cases had been transferred to this Court pursuant to 28 U.S.C. § 1407. The Magistrate ruled that Meyers was not a party to the case and therefore did not have standing to bring a motion on his own behalf.[1] He also held that the facts underlying the motion were not a part of the controversy before the Court, which is between former manufacturers of pantopaque dye and its component ingredients and individuals who allege injury resulting from treatment with that dye. Finally, the Magistrate ruled that the Court does not have subject matter jurisdiction over Mr. Meyers' dispute with Mr. Edell and his firm, as both are New Jersey residents. The Magistrate denied specific performance and injunctive relief requested by Meyers by Order dated April 1, 1996.[2] On the same day, he issued a Report and Recommendation ("R & R") recommending that this Court deny Meyers' motion. Meyers appealed from the Order and filed objections to the R & R.[3] Defendant pantopaque manufacturers oppose the appeal and request that the Court adopt the Magistrate's recommendation and deny Meyers' motion.

This Court need not provide an exhaustive factual history of this dispute, which is set forth in detail in the Magistrate's R & R. In brief, attorneys Edell and Meyers entered into a letter agreement on July 12, 1995 to compile and sell a "Plaintiff's Discovery Outline and Summary." Edell was to prepare the materials, Meyers was to handle marketing, and the attorneys' firms would split the profits. The packet was to contain discovery materials, as well as indexes, outlines and medical articles, all organized in an easily-digestible fashion. In short, the package was to contain both discovery and "work product" materials, such as a "hot documents" list.

Purchasing attorneys were to pay $5,000 for the packet and were to be required to promise that they would use the packet only for their own litigation purposes. Meyers and Edell clearly intended to profit from selling the packet. As stated in the July 12, 1995 letter agreement, "Hopefully, this payment will provide some compensation to us for the tremendous investment of time and money we have made over the last four years, in the development of relevant information and evidence regarding this litigation."

The "Outline and Summary" venture came to a sudden halt when one of Edell's clients entered into a settlement agreement in *Waters v. Eastman Kodak Co.*, pursuant to which the Edell firm was prevented from sharing its work product with any person except co-counsel in Edell's one remaining pantopaque case. Meyers then resorted to the Magistrate for enforcement of the agreement. Specifically, he sought an order (1) enjoining Alcon from enforcing the *Waters*

---

1. The Court notes that Mr. Meyers' appeal was docketed as an appeal by the plaintiffs that he represents. Mr. Meyers' papers make clear that he attempts to bring this appeal on his own behalf.

    On May 20, 1996, plaintiff William L. Matthews filed an untimely motion to join in Meyers' appeal and Meyers' objections to the April 1, 1996 Order and R & R. As the Court rules that this appeal is neither part of the instant controversy, nor a matter over which this Court may exercise subject matter jurisdiction, it will deny Matthews' motion.

2. The Order of the Magistrate Judge dated April 1, 1996 is attached to this Memorandum as Appendix A.

3. The Report and Recommendation of the Magistrate Judge dated April 1, 1996 is attached to this Memorandum as Appendix B.

confidentiality agreement, (2) voiding the non-disclosure provision of the *Waters* settlement, and (3) compelling the Edell firm to complete performance of the July 12, 1995 letter agreement.

The Magistrate ruled, and this Court agrees, that the July 12, 1995 private agreement between counsel is not part of the controversy between the pantopaque producers and plaintiffs. Indeed, this Court must echo the distress of the Magistrate in the face of Meyers' apparent inability to appreciate that, as plaintiffs' counsel, he is not a party to this litigation. The Court also joins in the Magistrate's concern over Meyers' apparent attempt to use his position as liaison counsel as a bargaining chip in marketing the outlines. *See* Meyers' letter to James Manolis, July 27, 1995. As the Magistrate emphasized, Meyers' duties were clearly limited to maintaining a service list and distributing the Court's orders to plaintiffs' counsel. Meyers had been clearly warned that he could not charge other counsel or parties for his services.

The parties have submitted lengthy briefs. Nonetheless, this situation is a simple one. In the words of the Magistrate: "The controversy over the July 12 agreement is a private contract dispute between two New Jersey residents, both of whom are nonparties. The contract did not arise out of, nor was it incorporated into, nor does it interfere with, any order or proceeding of this Court." R & R, April 1, 1996, at 6–7. Meyers' convoluted arguments boil down to the simple proposition that the Court should exercise jurisdiction over this dispute, as part of this case, because it would simplify and expedite the duties of counsel for the many pantopaque plaintiffs. However, there is no dispute that all discovery materials in this case are available from Alcon, which has maintained an extensive discovery depository to which all plaintiffs have access. As a result of the demise of the July 12 "Outline and Summary" venture, counsel for plaintiffs are deprived only of the work product of the Edell firm. Nothing in 28 U.S.C. § 1407 or its legislative history provides this Court with the authority to force attorneys to share their work product or to ensure that plain-

tiffs can purchase ready-to-use litigation packets.

The MDL has consolidated discovery for the benefit and protection of defendants and the courts, as well as to the substantial benefit of all plaintiffs who need not prepare document requests or interrogatories or take depositions. If plaintiffs are unable to obtain adequate discovery through Alcon, they should apply to the Magistrate for relief from Alcon's actions.

One other note is in order. Throughout his papers, Meyers attempts to vilify Edell, who withdrew as lead counsel for plaintiffs over three years ago with the Court's blessing. The Court is in no position to comment on whether or how Edell may have breached a private contract with Meyers. However, it is clear that if Edell's client wished to settle her case, Edell had an ethical duty to permit her to do so, even if that made litigation less economically advantageous for other plaintiffs, or himself. The Magistrate found that Edell has run afoul of no Court order in this matter, and the Court finds nothing in the record to the contrary.

Finally, Meyers' papers are disturbingly devoid of consideration of the interests of the parties to this case. The Court now takes the opportunity to remind him that this litigation exists strictly to determine if plaintiffs have been wronged by defendants, and to remedy any wrong that may have occurred. The interests of the attorneys to this case concern the Court only to the extent that they affect counsels' ability to pursue their clients' cases with the full vigor that the adversary process demands. Private disputes between them over economic matters have no business here.

For all of these reasons, on this 28th day of August 1996, **IT IS ORDERED** that the Order of the Magistrate Judge dated April 1, 1996 is affirmed; and

**IT IS FURTHER ORDERED** that the motion of plaintiff William L. Matthews to join in the appeal of the Magistrate Judge's Order dated April 1, 1996 is denied; and

**IT IS FURTHER ORDERED** that the Report and Recommendation of the Magistrate Judge dated April 1, 1996 is adopted,

and the motion of G. Martin Meyers to enforce an information-sharing agreement is denied.

## APPENDIX A

April 1, 1996

G. Martin Meyers, Esq.
Law Offices of G. Martin Meyers, Esq.
35 W. Main Street, Suite 106
Denville, New Jersey 07438

Marc Z. Edell, Esq.
Edel & Associates, P.C.
1776 On the Green
Morristown, New Jersey 07962–2355

Thomas J. Alworth, Esq.
Shanley & Fisher
131 Madison Avenue
Morristown, New Jersey 07962–1979

George A. Joseph, Esq.
Kirkland & Ellis
200 East Randolph Drive
Chicago, Illinois 60601

> Re: Abbent v. Eastman Kodak Company
> *Civil Action No. 9–3436, MDL No. 920 (JCL)*

Dear Counsel:

This matter comes before me on the motion of plaintiffs' counsel G. Martin Meyers to compel performance of a plaintiffs' information sharing agreement and to enjoin interference by defendant Alcon. As set forth in my accompanying report and recommendation, I have recommended that Meyers' motion be denied. I write separately to address the collateral issue of whether either Alcon or former lead counsel Marc Z. Edell violated the terms of my October 19, 1992 case management order ("Seventh Case Management Order").

The Seventh Case Management Order states in part:

> 1. Marc Z. Edell of the firm of Budd Larner Gross Rosenbaum Greenberg & Sade, P.C., shall act as lead counsel for all of the *Abbent* plaintiffs and the MDL plaintiffs.

> 2. Defendants will not be required to respond to separate interrogatories or document requests from separate plaintiffs except to the extent that such discovery relates to the particular facts of such plaintiff's case. Any future discovery requests by plaintiffs made on defendants shall be made on a consolidated, non-repetitious basis. All such discovery shall be served through Mr. Edell as lead counsel.

On December 4, 1992, however, Mr. Edell withdrew as co-counsel in *Abbent* and as lead counsel for the MDL plaintiffs.[1] Subsequently, in my Letter–Order of January 20, 1994, I declined to appoint replacement lead counsel and this matter has proceeded without one to this day. However, I did appoint Mr. Meyers as liaison counsel. The duties of liaison counsel were set forth as follows:

> 1. Maintain an up-to-date service list, which shall be made available to the Court and defendants on a regular basis;

> 2. Receive and distribute to all plaintiffs' counsel orders from the Court and correspondence from defendants.

As detailed more fully in my Report and Recommendation, on July 12, 1995 Mr. Meyers allegedly entered into an agreement with Mr. Edell's firm, Edell & Associates, to jointly prepare a "Plaintiffs' Discovery Outline and Summary" of discovery, evidence, witnesses, experts and articles pertinent to Pantopaque litigation. The agreement also allegedly provided that Mr. Meyers, purportedly in his capacity as MDL liaison counsel, would inform all plaintiffs' counsel of the existence of the "Outline and Summary" and offer to provide it to any attorney who tendered a $5,000 payment and agreed to use it only for litigation purposes.

Mr. Meyers now asserts that Mr. Edell and his firm, as a result of defendants' tortious interference with contract, breached the July 12 agreement. As discussed in the Report and Recommendation, Mr. Meyers has no standing to assert his claims in this matter due to his failure to comply with the procedural requirements set forth in Rule

---

**1.** Mr. Edell has since left the Budd Larner firm and is currently practicing with Edell & Associates, P.C.

24(c) for a motion to intervene. It is suggested, however, that in allegedly breaching their duties under the July 12 agreement Mr. Edell and his firm somehow violated the Seventh Case Management Order and thus I wish to clarify the duties of Mr. Edell and his firm under that order.

The Seventh Case Management Order named Mr. Edell as lead counsel in the *Abbent* and MDL actions. Under the order Edell was to be the conduit through which flowed discovery between plaintiffs and defendants. Defendants were required to produce discovery material to Mr. Edell's firm only and Mr. Edell was then to bear the burden (and the duty) of distribution to all other plaintiffs' counsel.

My order did not extend to, nor did Mr. Edell's duty encompass, any discovery material other than that produced by defendants to Mr. Edell in his capacity as lead counsel. Thus, under the order Mr. Edell was not required to provide all other plaintiffs' counsel with material he and his firm had acquired in matters outside of the Pantopaque MDL litigation, nor were they required to share any work product that they had developed in the MDL or any other matter. In addition, when Mr. Edell and his firm withdrew as lead counsel on December 4, 1992, any duty under my order to share material produced by defendants in the MDL action ceased.

There has been no allegation that Mr. Edell and his firm failed to provide other plaintiffs' counsel with material produced by defendants during the time period October 19, 1992 through December 4, 1992 and received by Mr. Edell and his firm as *Abbent* and MDL lead counsel. Of course, to the extent the Edell firm *is* in possession of such material, all plaintiffs counsel have the right to request and receive it.[2] I have no doubt that Mr. Edell and his firm will honor all such requests without the need for me to intervene. I fail to see, however, how the

alleged breach by Mr. Edell and his firm of the July 12 agreement constituted a violation of any case management order.

Nor has Alcon interfered with any plaintiff's ability to carry out discovery. In the absence of Lead Counsel in the MDL proceedings, Alcon has borne the burden of maintaining a depository of the discovery it has produced. Alcon continues to make all such materials available on an equal basis to all plaintiffs who have requested it in a timely manner. Plaintiffs who failed to do so by their discovery deadlines cannot now utilize the dispute between Messrs. Meyers and Edell to obtain a second bite at the discovery apple. That other plaintiffs' counsel are willing or unwilling to voluntarily assist those counsel who have missed their deadlines is a private matter between the parties and not the concern of this Court.

As a final matter, I wish also to address the scope of liaison counsel's duties. I am deeply troubled by Mr. Meyers' assertion that he entered into the July 12 agreement in his capacity as liaison counsel.[3] As set forth above, liaison counsel performs only two functions: he maintains the service list and circulates correspondence between the Court and defendants and all plaintiffs' counsel. *See also Manual for Complex Litigation, Third ("MCL")* at 27. Mr. Meyers cannot invoke the term "Liaison Counsel," and thus the authority of this Court, for any purpose other than those necessary to the carrying out of the designated duties of that appointment. Liaison counsel is not appointed to enter into agreements on the behalf of all other plaintiffs or to officially co-ordinate discovery matters on behalf of all other plaintiffs. In short, liaison counsel is not lead counsel.

Mr. Meyers' submissions on this motion strongly suggest that the distinction is lost on him. Mr. Meyers places continued emphasis on the fact that he purportedly entered into the June 12 agreement in his capacity as liaison counsel. Never once, however, is it established that he possessed

---

**2.** The Edell firm may, of course, charge any requesting party a reasonable fee for copying the material.

**3.** I do not purport to be rendering an interpretation of the June 12 agreement. Instead I merely refer to the characterization of that agreement Mr. Meyers propounds in his papers.

such authority. I do not mean to suggest that I frown upon private agreements between plaintiff's counsel to share discovery and work product. Such agreements may serve a useful purpose and reduce a client's costs of litigation.

I am disturbed by the July 27, 1995 letter from Mr. Meyers to Mr. Manolis which Mr. Meyers has submitted as an exhibit to his affidavit. It reads in part:

> I believe that, as soon as you begin to receive the Summary materials, you will immediately recognize that their value far exceeds the sum of $5,000. Nevertheless, you have my pledge of continued cooperation in (1) making every possible effort to insure that you are satisfied with the value of the materials we provide to you; (2) providing you with all additional sections of the Summary, as soon as they are completed; (3) providing you with additional materials that may come into our possession; and (4) *providing you with my ongoing cooperation in serving additional discovery requests without further charge, in my capacity as MDL Liaison Counsel, in the event you believe such additional discovery requests are required.* [Meyers Aff., Exh. C at 2 (Emphasis added)].

I will not abide the suggestion that one bonus attached to the purchase of Mr. Meyers' "Summary and Outline" is that he will perform the court-imposed duties of liaison counsel free of charge. Under the terms of my January 20, 1994 Letter–Order appointing Mr. Meyers, Mr. Meyers is expressly prohibited from seeking "any contribution toward expenses incurred from any other plaintiff's counsel at this time." January 20, 1994 Letter–Order at 3. Mr. Meyers is required to perform his liaison counsel duties free of charge regardless of whether they choose to accept his private offer to purchase a "Summary and Outline."

Counsel who receive court-appointed designations are charged with the duty to know and remain within the scope of their authority and to be ever vigilant for any conflicts which may arise between their designated responsibilities and the interests of their clients or themselves. *See MCL* at 28–29.

In my January 20, 1994 Letter–Order and Opinion, I expressed some hesitancy in my decision to appoint Mr. Meyers liaison counsel in this matter. It appears that Mr. Meyers has once again proved that hesitancy to be well-founded.

In light of the above I find that there is no basis to believe that either Alcon or Mr. Edell and his firm have failed to comply with any order of this Court.

**SO ORDERED.**

/s/ <u>Ronald J. Hedges</u>
Ronald J. Hedges
United States Magistrate
Judge

Orig: Clerk
cc: Hon. John C. Lifland
    Addressees
    File

APPENDIX B

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

In re Pantopaque Products
Liability Litigation

and

Darryl Abbent, et al.,

Plaintiffs,

v.

Eastman Kodak Company, et al.,

Defendants.

MDL No. 920

April 1, 1996

Civil Action No. 90–3436
Hon. John C. Lifland

*REPORT AND RECOMMENDATION*

*INTRODUCTION*

This matter comes before me on the motion of plaintiffs' counsel G. Martin Meyers to compel performance of a plaintiffs' information sharing agreement and to enjoin interference by defendant Alcon and its counsel.

I have considered the papers submitted.[1] There was no oral argument. Rule 78.

## BACKGROUND

The facts and events underlying this motion are relatively straight-forward. Several pantopaque product liability actions have been consolidated here for Multi–District Litigation ("MDL") pre-trial proceedings. G. Martin Meyers represents plaintiffs in the *Abbent* matter. Marc Z. Edell serves as co-counsel for the plaintiffs in the *Antoine* matter. Several years ago, Edell played a more prominent role in the MDL proceeding, acting both as Lead Counsel for all MDL plaintiffs and as co-counsel with Meyers in the *Abbent* matter.[2] In December 1992, however, Edell withdrew both as MDL Lead Counsel and as co-counsel in *Abbent*. Since Edell's withdrawal, no new Lead Counsel has been appointed. Beyond the MDL matters, Edell also serves as plaintiff's counsel in a separate New Jersey pantopaque action captioned *Waters v. Eastman Kodak Co., et al.*, Docket No. MRS–L–4144–92 (Law Div. Morris Co.), in which Alcon, a defendant here, is also a defendant. Alcon is represented both here and in *Waters* by Kirkland & Ellis.

On July 12, 1995, Meyers and the Edell firm purportedly entered into a letter agreement "to work jointly to develop a Plaintiffs' Discovery Outline and Summary." The "Outline and Summary" would "provide all plaintiffs' counsel with a summary of discovery already complete; a summary of important evidence already obtained; information concerning important fact and expert witnesses; a bibliography of relevant articles from the medical literature; and any other information which we feel it might be beneficial to share with all plaintiffs' counsel." The agreement provided that the Edell firm would take the lead in preparing an initial draft of the "Outline and Summary" and that

Meyers, purportedly in his capacity as MDL Liaison Counsel,[3] would "undertake to inform plaintiffs' attorneys of the existence of the Outline and Summary ... and to circulate the Outline and Summary to all plaintiffs' counsel who are interested in purchasing it in accordance with the terms we have agreed upon."

Under the terms of the agreement, plaintiffs' counsel who expressed interest in receiving the "Outline and Summary" would be required to provide "a monetary payment in the amount of $5,000, and the representation ... that he or she will utilize the Outline and Summary only for his or her own litigation purposes." Profits from the sale and distribution of the "Outline and Summary" were to be split between Meyers and the Edell firm. It was hoped that the profits would "provide some compensation ... for the tremendous investment of time and money we have made over the last four years, in the development of relevant information and evidence regarding this litigation."

At first all went well. The Edell firm began preparing the Outline and Summary and several plaintiffs' attorneys expressed preliminary interest in acquiring the material. On August 18, 1995, James Manolis, counsel for the *Ferrara* plaintiffs, became the first (and only) counsel to agree to the terms and provide Meyers with a check for $5,000. On August 22, 1995, the Edell firm forwarded a packet of material, described as "attorney work product" to Manolis. On September 5, 1995 Meyers forwarded to Edell a check for $3,000 which represented the Edell firm's share of the Manolis sale.

In late September, however, trouble began to brew. On September 20, 1995 Manolis wrote to Meyers expressing his disappointment with the usefulness of the material forwarded by the Edell firm and expressing his hope that "there is much more information that is forthcoming and that will be

---

1. On this motion both sides have inundated me with submissions for which no leave to submit has been granted. In accordance with General Rule 12C I have considered only Meyers' original memorandum, the responses of Alcon and Edell, and Meyers' reply.

2. At the time Edell was with the firm of Budd Larner Gross Rosenbaum Greenberg & Sade, P.C. Edell now practices with Edell & Associates, P.C.

3. I discuss the duties of MDL Liaison Counsel, as well as those of Lead Counsel, in my accompanying Letter–Order and Opinion.

beneficial to us given the significant amount of money we have paid." Manolis, however, would not receive any further material, for on September 25, 1995 Edell's client in *Waters* entered into a tentative settlement agreement in that matter with Alcon.[4] As part of the *Waters* settlement certain discovery and work product obtained and generated by the Edell firm was deemed to be confidential and proscribed from disclosure by the Edell firm to any person except co-counsel in *Antoine*. Believing that the *Waters* settlement precluded its further participation in preparing the "Outline and Summary" material, the Edell firm informed Meyers in an October 4, 1995 letter that it would "no longer be involved in the preparation and distribution of any 'pantopaque litigation packages.'" Edell also subsequently offered to refund to Manolis Edell's $3,000 share of the packet price paid by Manolis.

On November 17, 1995 Meyers filed this motion in which he seeks a whole host of relief, including: 1) an order enjoining Alcon from interfering with execution of the July 12 agreement, 2) an order declaring the non-disclosure provision of the *Waters* settlement agreement to be "null and void," and 3) an order compelling the Edell firm to complete performance of the July 12 agreement and to show cause why it shall not be sanctioned for its failure to do so.[5]

### DISCUSSION

There is no dispute that Meyers seeks enforcement of a contract, seeks to enjoin the tortious interference with that contract, and seeks modification of a state court protective order. These disputes are of neither a case-management nor a discovery nature. They are more properly characterized as the individual claims of Meyers which he seeks to have adjudicated under the *Abbent* and MDL captions.[6] I thus write here to address whether it is proper to do so.

It is axiomatic that a federal court may only adjudicate the claims of persons who are parties before it. *See SEC v. Investors Sec. Leasing Co.*, 610 F.2d 175, 177–78 (3d Cir. 1979) (district courts do not have jurisdiction to consider claims of nonparties). Here Meyers, a nonparty, seeks enforcement of contractual rights which run to him and his firm, rather than to any party. As a threshold matter, Meyers must first seek to intervene under Rule 24 before he may even assert his claims here. *In re Fine Paper Antitrust Litigation*, 695 F.2d 494, 499 (3d Cir.1982) (absent intervention nonparties are without standing to present claims to a court). Procedurally, Rule 24(c) requires that "[a] person desiring to intervene shall serve a motion to intervene upon the parties as provided in Rule 5." The motion, in turn, "shall state the grounds therefor and shall be accompanied by a pleading setting forth the claim or defense for which intervention is sought." Rule 24(c). Meyers has failed to file such a motion. While Meyers did file a "Motion to Compel Performance of Plaintiffs' Information Sharing Agreements and to Enjoin Interference by the Alcon Defendants," this motion and its supporting papers make absolutely no reference to intervention or to Rule 24.[7]

---

4. The settlement was subsequently finalized on October 23, 1995.

5. The original motion was brought jointly by Meyers and Manolis and also requested various relief pertaining to the enforcement of the purported August 18 agreement between Manolis, Meyers and Edell. In January 1996, however, a settlement was reached in *Ferrara* between Manolis' clients and Alcon. It has been represented to me that in light of the settlement Mr. Manolis has withdrawn from the motion. I have thus treated all requests for relief pertaining to the August 18 agreement as moot.

6. Meyers asserts that he entered into the July 12 agreement in his capacity as MDL Liaison Counsel. As I explain in my accompanying Letter-

Opinion and Order, that position carried no such authority.

7. Meyers is apparently under the mistaken belief that counsel for the parties in a matter are themselves parties that matter. *See* Reply Brief at 4–5 ("[Alcon's counsel] and [its] clients ... are parties to every case involved in these MDL proceedings," and "[Alcon's argument] is obviously based ... upon [its] erroneous contention the Edell is not an MDL plaintiff."). Serving as counsel for a party, however, does not confer party status. Meyers, Edell and the Kirkland firm are all nonparties to this matter.

A district court may at its discretion accept a procedurally deficient motion to intervene or construe a motion of a different stripe to be a constructive or implied motion to intervene. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 595–96 (7th Cir.1993); *Beckman Industries, Inc., v. International Ins. Co.*, 966 F.2d 470, 474 (9th Cir.), *cert. denied sub nom. International Ins. Co. v. Bridgestone/Firestone, Inc.*, 506 U.S. 868, 113 S.Ct. 197, 121 L.Ed.2d 140 (1992). I do not believe, however, that such an exercise of discretion is appropriate in the case of the motion before me. Rule 24(c) is intended "to enable the court to properly frame the issues, and to inform the parties against whom some right is asserted or relief sought." *Ryer v. Harrisburg Kohl Bros., Inc.*, 53 F.R.D. 404, 411 (M.D.Pa.1971). Although an outline of the claims Meyers seeks to assert may be discerned from his motion, he has failed to address several basic intervention issues, including whether intervention is sought as of right under Rule 24(a) or by permission under Rule 24(b), whether nonparties Edell and the Kirkland firm may be joined, and how all the parties, once present, should be aligned for jurisdictional purposes. It is impossible to divine Meyers' position on any of these issues from the papers he has filed and I am not about to speculate on what those positions may be. As I find the requirements of Rule 24(c) have not been met, nonparty Meyers does not have standing to present his claims to the Court. *In re Fine Paper*, 695 F.2d at 499; *Ryer*, 53 F.R.D. at 411. I thus recommend that Meyers' motion be denied.

Alternately, even had Meyers filed a proper Rule 24 motion to intervene, presumably under subsection (b), permissive intervention,[8] I would have still recommended that his motion be denied. At its core Meyers' request is essentially that I exercise ancillary jurisdiction over his contract claims against Edell, Kirkland, and Alcon. Ancillary jurisdiction "recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, ——, 114 S.Ct. 1673, 1676, 128 L.Ed.2d 391 (1994). I believe that here ancillary jurisdiction would not extend to the claims that Meyers seeks to have adjudicated.

Normally questions of ancillary jurisdiction are determined under the supplemental jurisdiction statute, 28 U.S.C. § 1367. Section 1367 codified the judicially-created doctrines of ancillary jurisdiction and pendent jurisdiction. However, Section 1367 applies only "to civil actions commenced on or after December 1, 1990," the date of its enactment. Pub.L. 101–650, Title III, § 310(a), Dec. 1, 1990, 104 Stat. 5113. As the *Abbent* matter was filed on August 28, 1990, one must look to the caselaw on ancillary jurisdiction as it existed prior to the enactment of section 1367.

The Supreme Court has explained that ancillary jurisdiction is usually asserted for "two separate, though sometimes related, purposes: (1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees." *Kokkonen*, 511 U.S. at ——, 114 S.Ct. at 1676. As to the first purpose, prior to the enactment of Section 1367, the Third Circuit utilized a three-tiered analysis for determining whether ancillary jurisdiction

---

**8.** Meyers also could have elected to file a motion under subsection (a), intervention as of right. Under Rule 24(a) an applicant is required to show (1) that the application for intervention is timely; (2) that the applicant has a sufficient interest in the property or transaction which is the subject of the action; (3) that their exists a threat that disposition of the action may affect or impair the applicant's ability to protect the interest; and (4) that the interest is not adequately represented by an existing party in the litigation. *Mountain Top Condominium Assoc. v. Dave Stab-bert Master Builder, Inc.*, 72 F.3d 361, 365–66 (3d Cir.1995); *Development Finance Corp. v. Alpha Housing & Health Care, Inc.*, 54 F.3d 156, 161–62 (3d Cir.1995) (*citing United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994)). I am unable, however, to identify any interest which Meyers may assert in the *Abbent* litigation sufficient to support intervention. Nor can I imagine how any disposition in *Abbent* might affect or impair Meyers' ability to protect any interest he might have.

should be exercised in a particular case. *Ambromovage v. United Mine Workers of America*, 726 F.2d 972 at 989–92 (1984). First, the court must decide "whether there is a 'common nucleus of operative fact'" between the main claim and the claim over which jurisdiction is sought. 726 F.2d at 989 (*quoting United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966)). Second, the court must "determine whether the exercise of jurisdiction at issue would violate a particular federal policy decision, such as the requirement of complete diversity." 726 F.2d at 989–90. Third, the court must weigh the appropriateness of hearing an ancillary claim. 726 F.2d at 990.[9]

Here there is no common nucleus or interdependence of facts. The facts underlying the dispute over the July 12 agreement and the facts underlying the Abbents' product liability claims "have nothing to do with each other," and thus "it would neither be necessary nor even particularly efficient that they be adjudicated together." *Kokkonen*, 511 U.S. at ——, 114 S.Ct. at 1676. No disposition of any matter in *Abbent* will effect the rights of Meyers under the July 12 agreement nor would one normally expect that the two disputes would ordinarily be heard together in the same forum.

Nor is the exercise of ancillary jurisdiction over the dispute necessary to enable the Court to function successfully. As a threshold matter, the jurisdictional scope of an MDL Transferee Court's inherent supervisory power over the matters consolidated before it does not expand beyond that of an individual district court:

While [28 U.S.C.] § 1407 provides a procedure for transferring cases filed in different districts to a single district for pretrial proceedings, nowhere does it expand the jurisdiction of either the transferor or the transferee court. As in any other case, a transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred, and any attempt without service or process to reach others who are unrelated is beyond the court's power. [*In re Showa Denko K.K. L–Tryptophan Products Liability Litigation II*, 953 F.2d 162, 165–66 (4th Cir.1992) ].

There is no question that a district court may, as part of its supervisory powers, exercise jurisdiction over disputes related to the execution of an order of the court or otherwise related to the preservation of the integrity of the proceedings before it. However, no such dispute is present here. The July 12 agreement did not arise out of, nor is it necessary to the execution of, any order in this matter. The agreement's performance or non-performance will not effect the ability of this Court to ensure that every plaintiff has access to the discovery to which he or she is entitled, nor is its execution necessary to ensure the fair resolution of any plaintiff's claim.[10] An extension of a district court's supervisory power to cover such a nonessential private agreement would be to exercise power "quite remote from what courts require in order to perform their functions." *Kokkonen*, 511 U.S. at ——, 114 S.Ct. at 1677.

In short, the controversy over the July 12 agreement is a private contract dispute between two New Jersey residents, both of

---

**9.** *Ambromovage*, which like *Gibbs* involved an underlying federal question claim, reserved the question of whether the three-tiered analysis would apply to a case, such as the present one, where the ancillary claim is attached to an underlying claim based on diversity jurisdiction, although the court noted that "it is doubtful that ... [the jurisdictional questions] should be resolved differently." 726 F.2d at 989 n. 50. I note, however, that the Third Circuit has found the *Gibbs* consideration embodied in the first-tier of the *Ambromovage* analysis relevant where diversity forms the basis of the court's jurisdiction

over the underlying claim. *Jacobson v. Atlantic City Hosp.*, 392 F.2d 149, 155 (3d Cir.1968).

**10.** Meyers suggests that performance of the agreement would enable plaintiffs' attorneys who purchase the packet to prosecute their client's cases with much greater ease and at a much lower cost. That may very well be so. It does not, however, make performance of the agreement necessary to the function of the Court or otherwise bring it within the Court's ancillary jurisdiction.

whom are nonparties. The contract did not arise out of, nor was it incorporated into, nor does it interfere with, any order or proceeding of this Court. The fact that the parties to the contract were counsel for litigants in this matter and the fact that the agreement pertained to material relevant to this matter does not bring the contract within the jurisdiction of this court. *Cf. Taylor v. Kelsey,* 666 F.2d 53, 54 (4th Cir.1981) (ancillary jurisdiction did not extend to fee dispute involving purely private contract between two attorneys who were representing litigants in a district court action); *Foster v. Board of Trustees,* 771 F.Supp. 1118, 1121–22 (D.Kan. 1991) (declining to exercise ancillary jurisdiction over fee splitting dispute between two attorneys where dispute did not arise from transaction which gave rise to the man action nor did it form an integral part of the main proceeding).

Additionally, as to Meyers request for modification of the protective order that was entered by the state court in *Waters,*[11] Meyers has presented his request in the wrong forum. Modification by one court of the orders of another offends basic notions of comity. Federal courts thus recognize that the proper procedure for a nonparty who seeks the modification of a protective order is to petition for intervention for that limited purpose *in the matter in which the order was entered. Pansy v. Borough of Stroudsburg,* 23 F.3d 772, 778–80 (3d Cir.1994). Apparently the same procedure is followed in the New Jersey courts. *See, e.g., Hammock by Hammock v. Hoffmann–LaRoche, Inc.,* 142 N.J. 356, 364, 662 A.2d 546 (1995) (nonparties intervened under *R.* 4:33–2 to seek modification of protective order entered in that matter). Meyers should thus petition the *Waters* court if he seeks modification of any order entered in that matter.

Meyers, citing *In re Upjohn Co. Antibiotic Cleocin Products Liability Litigation,* 664

F.2d 114 (6th Cir.1981), attempts to argue that a MDL transferee court may vacate protective orders when those orders prevent the sharing of information between plaintiffs' counsel in related state and federal actions. *Upjohn,* however, holds only that a MDL transferee court may vacate and modify the protective orders entered by *transferor courts. In re Upjohn,* 664 F.2d at 120. The *Waters* matter is *not* a matter which was transferred here for MDL consolidation and thus *Upjohn* is inapposite.

### CONCLUSION

For the foregoing reasons, I recommend that Meyers' motion to compel performance of a plaintiffs' information sharing agreement and to enjoin interference by defendant Alcon and its counsel be **DENIED.** Pursuant to General Rule 40D.5 the parties have ten days from receipt hereof to file and serve objections.

/s/ <u>Ronald J. Hedges</u>
Ronald J. Hedges
United States Magistrate
Judge

Orig.: Clerk of the Court
cc: Hon. John C. Lifland
    File

---

**11.** It is unclear whether such a protective order even exists. Neither party attached a copy of any order to their papers and although Meyers refers in his initial brief to a protective order and specifically requests its modification, Edell and Alcon in their papers refer only to a settlement agreement. If indeed all that exists is a private settlement agreement between the *Waters* parties, I note that Meyers has failed to state on what basis a nonparty to a private agreement, absent an assertion of right granted by that agreement, may mount a court challenge to any provision to that agreement (in federal court, no less).